**Erskin Keith HARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–97–00806–CR, 14–97–00807–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 1, 1999.

Jules L. Laird, Jr. of Houston, for appellants.

Keli Pool Roper of Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN and WITTIG.

## OPINION

WITTIG, Justice.

Appellant, Erskin Keith Harris, pled not guilty before a jury to two counts of aggravated sexual assault with a deadly weapon. *See* TEX. PEN. CODE ANN. § 22.021 (Vernon 1994). He was convicted on both, and the jury sentenced him to life in the Texas Department of Criminal Justice, Institutional Division. In two points of er-

ror, appellant asserts the trial court erred in denying his *Batson* challenges and his request for a mistrial concerning an improper argument. We affirm.

## Background

On March 4, 1995, M.S. arrived at work around 7:00 a.m. M.S. greeted her manager, Henry Darling when an assailant came from behind him with a gun. The assailant said he wanted the money from the safe. He took M.S. and Darling to the back of the store where he found an empty safe. He then stated he would wait for the Brinks truck to arrive. He tied M.S. and Darling down with the telephone cord. Then, he sexually assaulted M.S. and took a ring off her finger.

On July 15, 1995, an assailant entered a travel agency where M.D. work around 9:00 a.m. The assailant pulled out a gun and said "this is an assault." He forced her into the backroom. Then, he sexually assaulted her, took a sapphire ring, a Gucci watch, and a copy machine, and tied her down with a phone cord.

Both M.S. and M.D. identified the assailant as appellant. M.D. recognized the copier and the gun found in appellant's custody as the copier taken from her office and the gun used in her attack. In addition, each victim was medically examined consistent with the rape kit procedures and sampling techniques. DNA samples were taken in both of these examinations, and samples from both matched appellant's DNA.

## Batson Challenge

■ In appellant's first point of error, he alleges that the trial court erred in denying his objection to the State's exercise of its peremptory challenge against venire members based on race, in violation of the Equal Protection Clause of the United States Constitution and article one, section three of the Texas Constitution. It is well established that a peremptory strike used in a racially discriminatory fashion is

prohibited by the Fourteenth Amendment. *See* TEX. CODE CRIM. PROC. ANN. art. 35.261 (Vernon 1989); *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

■ Initially, the defendant must establish a prima facie case of purposeful discrimination. *See Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim.App.1992). If the defendant makes this showing, the State must then rebut the presumption of discrimination with race neutral explanations for challenging the jurors in question. *Id.* If the State meets its burden, the burden shifts back to the defendant to impeach or refute the neutral explanations or to show that they are merely a pretext for discrimination. *Id.* The trial court must then determine if the defendant proved the peremptory strikes were used in a purposefully discriminatory manner. *Id.*

■ When an appellate court reviews a trial court's finding, it must review the entire record, including voir dire and the *Batson* hearing. *See Whitsey v. State*, 796 S.W.2d 707, 723 (Tex.Crim.App.1989). The appellate court must determine whether a discriminatory intent is inherent in the prosecutor's explanation. *See Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). A reversal is mandated only if a review of the voir dire record, the State's explanations, the composition of the jury panel, and the appellant's rebuttal and impeachment evidence result in a definite and firm conviction that the trial court erred. *See Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim.App.1992); *Tate v. State*, 939 S.W.2d 738, 744 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd).

■ In response to appellant's *Batson* challenge, the State explained that it struck venire member number one because (1) he had been charged with possession of marijuana and the unlawful carrying of a weapon after indicating he had never been

accused on the case; (2) he is in favor of rehabilitation; and (3) he was only one of sixty to opine concerning the burden of proof. The voir dire record also indicates that he believes that DNA is a new and unreliable science. "[W]hen the State has offered more than one plausible reason for striking a veniereperson, it is proper to review these reasons in the entirety in order to assess whether the State's explanation was valid or merely pretextual." *Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim.App.1992). We find the State's reasons for striking number one are race neutral. *See Adanandus v. State*, 866 S.W.2d 210, 224–25 (Tex.Crim.App.1993) (recognizing that rehabilitation as primary goal of punishment is a race neutral reason for exclusion); *Anderson v. State*, 758 S.W.2d 676, 680 (Tex.App.—Fort Worth 1988, pet ref'd) (striking for prior trouble with law is a race neutral reason for exclusion).

■ The State explained that it struck venire member number eleven because the State believed he said he would need to have seen the offense occur. The State was also unfamiliar with number eleven's occupation, a blender. The record indicates that the prosecutor may have been mistaken about the first basis for his challenge, it nevertheless was race neutral, and we find no indicia that the challenge was racially motivated. *See Tate v. State*, 939 S.W.2d at 746 (recognizing mistaken reason was racial neutral). In addition, striking a juror based on his occupation does not violate *Batson*. *See Barnes v. State*, 855 S.W.2d 173, 174 (Tex.App.— Houston [14th Dist.] 1993, pet. ref'd). Therefore, the State provided race neutral reasons for the exercise of its peremptory challenge against number eleven, and appellant failed to prove otherwise.

■ Appellant also challenged the State's use of its peremptory strikes on venire members fifteen, twenty-nine, thirty-seven, and forty-one. The State gave multiple race neutral reasons for each. The State struck number fifteen because it

did not like his explanation of his arrest concerning a bad check. *Branch v. State,* 774 S.W.2d 781, 783 (Tex.App.—El Paso 1989, pet. ref'd) (recognizing arrest of prospective juror for offense is objective basis to exercise peremptory challenge); *Anderson,* 758 S.W.2d at 680. Juror thirty-seven indicated she had a problem with the burden of proof. *See Williams v. State,* 804 S.W.2d 95, 104–07 (Tex.Crim. App.1991) (recognizing views and attitudes about State's burden of proof are race neutral reasons for exclusion). Juror forty-one indicated that the purpose of punishment should be a rehabilitation instead of deterrence. *See Adanandus,* 866 S.W.2d at 224–25. In addition to the above independent reasons for striking numbers fifteen, thirty-seven, and forty-one, all three of these venire members as well as venire member number twenty-nine indicated that they would need more than DNA evidence to convict and were in favor of the O.J. Simpson verdict.

■ The State has the right, as does the defense, to ask proper questions of the venire panel so that it may intelligently exercise its peremptory challenges. *See, e.g., Tate,* 939 S.W.2d at 746. The prosecutor made clear during his voir dire that the State's case was based largely of DNA and other types of circumstantial evidence. The prosecutor questioned the venire members concerning the issue of DNA testing. The prosecutor also asked whether they agreed with the O.J. Simpson verdict, a verdict where the jury rejected DNA testing. The prosecutor's race neutral reasons shifted the burden of proof to appellant to show that these reasons were merely a pretext for discrimination. *See Harris,* 827 S.W.2d at 955. Appellant has not shown any disparate treatment in the questioning of the venire members or that the prosecutor's explanations, concerning the DNA testing and O.J. Simpson verdict, were pretexts for intentional discrimination. Moreover, we find these circumstances present a situation where a peremptory challenge is appropriate because the prospective juror is not challengeable for cause, but the prosecutor does not believe the venire member will be a favorable juror for the State.

■ Appellant argues that there where three other jurors that indicated that they would need more than DNA to convict. The record must reflect something beyond the fact that other prospective venire members were not excused because they possessed the same characteristics as those venire members struck. *Cantu,* 842 S.W.2d at 689. Disparate treatment is not shown merely because the State's reasons for striking a juror might also apply to other acceptable jurors because it is unlikely that two potential jurors will possess the same characteristics in precisely the same degrees. *See Cantu,* 842 S.W.2d at 689; *Roberts v. State,* 866 S.W.2d 773, 777 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

■ The composition of the jury panel is another factor we are to consider in reviewing a trial court's finding on a *Batson* hearing. *Vargas,* 838 S.W.2d at 554. Appellant pointed out as a rebuttal to all the State's race neutral reasons that the State exercised five of its ten peremptory challenges on members of his race. However, there is nothing in the record to indicate the racial composition of the entire venire panel. *See Hatchett v. State,* 930 S.W.2d 844, 847 (Tex.App.—Houston [14th Dist.] 1996, ref'd). Nor is there anything in the record reflecting the race of the venire members challenged for caused or of the venire members peremptorily challenged by appellant. *Id.* On the contrary, the State requested and the trial court did take judicial notice that the jury selected consisted of one member of appellant's race and members of various other races.

The State satisfied its burden of proof by providing race neutral explanations concerning the use of its peremptory strikes. Based on the voir dire record, the *Batson* hearing, the composition of the

jury panel, and appellant's responses, we cannot conclude that the trial court erred in denying appellant's *Batson* challenge. Accordingly, we overrule appellant's first point of error.

### Jury Argument

 Next, appellant challenges the prosecution's argument in the punishment phase. A prosecutor is afforded wide latitude in drawing inferences, if reasonable, and may strike hard blows, but not foul. Appellant had just been convicted in this trial of two brutal rapes. Appellant further admitted to a prior conviction involving solicitation of prostitution. May a prosecutor reasonably argue the angst of the victim M.S., while she faces the possibility of awaiting the results of medical or AIDS testing? We conclude, yes.

 The standard of review for jury argument, is delineated into four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) responsive arguments; and (4) pleas for law enforcement. *See Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App. 1973). These categories apply equally to both the guilt-innocence and punishment phases of a criminal trial. *See Washington v. State*, 668 S.W.2d 715, 718 (Tex. App.—Houston [14th Dist.] 1983, pet. ref'd). Counsel is to be afforded wide latitude in drawing inferences from the record, if such inferences are reasonable and offered in good faith. *See Perry v. State*, 977 S.W.2d 847, 850 (Tex.App.— Houston [14th Dist.] 1998, no pet. h.). If a jury argument exceeds the bounds of proper argument, it is not reversible error, unless, in the light of the record as a whole, the argument is extreme, manifestly improper, violative of a mandatory statute, or injects into to the trial new facts harmful to the accused *See McKay v. State*, 707 S.W.2d 23, 38 (Tex.Crim.App. 1985). A prosecutor may strike hard blows but not foul ones. *United States v. McPhee*, 731 F.2d 1150, 1152 (5th Cir. 1984).

Indeed the prosecutor stuck a hard blow to this twice convicted rapist when he argued for punishment for the M.S. offense.

She thinks she's safe, good morning, getting ready to sell pictures frames to nice ladies, and then ... the most horrible thing in the world that she never imagined happens .... She's got this huge man behind her having sex with her and then later she finds out about his—well, you find out that he's been convicted of prostitution. Well that's a great feeling. Your rapist has been convicted of prostitution. I guess when you wait for the medical tests to come back you just hold your breath.

 The trial judge sustained the appellant's objection, instructed the jury to disregard per counsel's request, and denied the motion for mistrial. Instructions to disregard impermissible jury argument generally cures error, if any. *See Cooks v. State*, 844 S.W.2d 697, 727 (Tex.Crim.App. 1992). A mistrial is warranted only in extreme conditions and ought be exceedingly uncommon when an objection is sustained and curative instructions given. *See Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App.1996).

Thereafter, the prosecutor continued "[i]t's reasonable to assume if you get raped you probably—these days you would have an Aids [sic] test. And I would assume it's reasonable from the evidence." Appellant again objected that there is no evidence of an AIDS test. In response to this "no evidence" objection, the trial court gave the following instruction. "The jury will recall exactly what the evidence is. [The prosecutor is] allowed to make reasonable argument from the evidence." The prosecutor ended the sequence by stating: "I believe that-I think that's a reasonable inference from the evidence. Hold your breath while that comes back."

Appellant testified in the punishment phase he had been convicted of solicitation of prostitution. He had just been convicted of two vicious rapes. One could in good

faith infer cautionary health screens, including AIDS testing, after being raped by appellant, particularly in light of the admission of his attempted sexual liaison with a prostitute.

In *Cooks v. State*, 844 S.W.2d 697 (Tex. Crim.App.1992) the prosecutor suggested to the jury in an assault case the victim "would probably be dead today" except for police intervention. *Id.* at 729. Finding that statement was potentially beyond the scope of proper jury argument, the trial court instructed the jury to disregard. As in our case, the argument was not so extreme or manifestly improper as to call for reversal in light of the testimony. *Id.* Here, assuming the prosecutor's argument was improper, the court similarly instructed the jury. Following the rationale in *Cooks*, we hold the prosecutors remarks were not so extreme or manifestly improper to merit reversal. *Id.; see also* TEX. R. APP. P. 44.2(b).

▪ Appellant also argues article 21.31 of the Texas Code of Criminal Procedure would exclude AIDS's testing results. *See* TEX. CODE CRIM. PROC. ANN. art. 21.31(a) (Vernon 1999). This section facially excludes from the evidence the use of the fact of AIDS and HIV testing as well as the test results when that evidence is offered *by the State.*[1] However, there is no evidence this section was invoked because the *trial court* did not order either AIDS or HIV testing. In addition, article 21.31 addresses the testing of the *accused,* not the crime victim. *Id.* Here, the prosecutor's argument only addressed by inference possible testing of the victim. Appellant's second point of error is overruled.

We affirm the judgment of the trial court.

---

1. Because that statute is inapplicable here, we will not address the curious preclusion by the legislature (apparently applying only to the state and not the defense) of potentially corroborative evidence of the crimes of indecency with a minor, sexual assault and aggravated sexual assault.