Affirmed and Opinion filed July 27, 2004









Affirmed and Opinion filed July 27, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00441-CR

____________

 

TOMAS YANEZ SUAREZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 182nd
District Court

Harris County, Texas

Trial Court Cause No. 922,780

 



 

O P I N I O N

Appellant, Tomas Yanez Suarez, appeals his
conviction for aggravated sexual assault of a child and sentence of fifteen
years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  On appeal, appellant contends he received
ineffective assistance of counsel by his lawyer=s failure to
object (1) in the guilt-innocence phase of the trial to irrelevant
victim-impact evidence, and (2) in the punishment phase of the trial to hearsay
evidence that appellant is infected with the human immunodeficiency virus (HIV)
and might have infected the complainant. 
We affirm.








The complainant was 15 at the time of
trial.  Appellant was the boyfriend of
the complainant=s mother, Rosalinda Delacruz, and is the
complainant=s uncleCher father=s brother.  Appellant is also the father of Rosalinda=s children,
Veronica (age 12), Sonia (age 11), and Tommy Suarez (age 8).  The complainant=s brothers are
Alejandro (age 18), Andres (age 17), and Carlos (age 13).  When the complainant was eight years old, she
moved with her mother out of appellant=s home.  When the complainant was ten, she lived with
her aunt in California.  The complainant
returned to Texas in 1999, when she was twelve years old.  Shortly thereafter, the complainant=s mother returned
to California, while the complainant and her siblings lived with appellant. 

At appellant=s home, the
complainant shared a bedroom with Veronica and Sonia; Alejandro, Carlos, and
Andres slept in the same room; Tommy slept in appellant=s room.  When the complainant was thirteen, her
brothers, Alejandro, Andres, and Carlos, moved to California.  The complainant, Veronica, Sonia, and Tommy
remained with appellant.  The complainant
was now the oldest child in appellant=s house.  After the complainant=s brothers left,
the sleeping arrangements changed.  Tommy
started sleeping in the same room as Veronica and Sonia.  The complainant started sleeping in appellant=s room; the
complainant would either start out sleeping in appellant=s room, or she
would start out sleeping in the same room with Veronica and Sonia and appellant
would wake her up and tell her to move into his room.

The complainant testified that the sexual
abuse started with appellant kissing her and then touching her.  Appellant told the complainant to take off
her clothes.  Appellant would touch her
breasts and would then put his finger insider her vagina.  








Appellant treated the complainant
differently from Veronica, Sonia, and Tommy in other ways.  Appellant always made the complainant sit in
the front seat of the car, while the other children always sat in the
backseat.  Appellant bought the
complainant birthday presents, but would not buy any birthday presents for the
other children.  For example, he bought
the complainant red roses on her fourteenth birthday.  Veronica testified that appellant bought more
things for the complainant than the other children.  

In August 2001, appellant took the
complainant out of school when she was starting the ninth grade.  The complainant stayed home, cleaning the
house, doing the dishes, and cooking. 
The other children did chores when they came home from school.  Appellant would not allow the complainant to
go outside or use the phone.  At first,
the other children did not know the complainant was not in school, Veronica
subsequently found out from a neighbor.

          Veronica testified to three occasions
when she saw appellant and the complainant having sex.  Veronica also overheard the complainant
telling appellant that she wanted to marry him and she wanted to have his baby,
but appellant said her mother would get mad at him.  Veronica 
heard the complainant say she would pretend her doll was her baby and
told appellant to buy baby clothes for her doll.  The complainant testified that appellant said
he wanted her to have his child, and when that happened, they would move to
another part of the state so that no one would know about it.  The complainant testified that appellant told
her she was going to become his wife. 

Veronica told some neighbors about what
was happening between appellant and the complainant.  One of the neighbors called Children=s Protective
Services (ACPS@).  CPS came out to the house and spoke to
everyone separately.  Veronica told CPS
was what was going on.  The complainant,
however, lied to CPS because she was scared and claimed nothing was going
on.  Appellant also denied that anything
was going on between the complainant and him. 
The complainant and the other children stayed with a neighbor for a
couple of weeks, but then returned to appellant=s house.  CPS came to appellant=s house several
more times, but apparently took no other action.  

The complainant was also interviewed by
the Children=s Assessment Center (ACAC@).  The complainant told CAC that she was not
having a sexual relationship with appellant; instead, she told CAC that when
she lived in California, her mother=s boyfriend had
abused her and her brother, Andres, had had sex with her.  








The complainant had a friend, Francisco,
who lived a few houses down the street from appellant=s house.  The complainant claimed she neither went out
with Francisco nor had sexual relations with him.  The complainant testified that Francisco
never came in the house and she only talked to him outside.  Francisco visited the complainant by climbing
over the back fence.  Appellant found out
about Francisco when he saw the complainant with him outside.  Appellant would not allow the complainant to
have any friends and she was not supposed to see anyone but him.  

On October 24, 2001, appellant drove the complainant
and the other children to California to live with their mother, Rosalinda.  Appellant returned to Texas, while the
children stayed with Rosalinda in California until December 2001.  Rosalinda=s mother found out
the complainant was calling someone named Francisco in Texas.  Veronica told her mother about the
complainant and appellant; the complainant denied Veronica=s claim.  When Rosalinda accused the complainant of
having sex with Francisco, she finally admitted that appellant had been having
sex with her.  Rosalinda, the
complainant, and the other children returned to Baytown.  

After returning to Baytown, Rosalinda
called the police.  The complainant told
the police and CPS what appellant had been doing to her.  On January 31, 2002, the complainant was
examined by the CAC.  The complainant
told Deborah Parks of the CAC that appellant had Asexually abused@ her.  The complainant told Parks that appellant
started touching her when she was ten, but later testified she was thirteen
when the abuse actually started.  The
complainant described to Parks, in graphic detail, how appellant progressed
from initially touching her breasts to eventually engaging in sexual
intercourse and deviate sexual intercourse with her.  The complainant also explained to Parks that
appellant would not permit her to attend school because he was afraid she would
tell her teachers, and he would shoot her if she told anyone.  The complainant further told Parks the abuse
occurred A[f]or 2 years.  Mostly everyday.@  The last sexual contact occurred on October
24, 2001Cthe day appellant
drove the children to California. 








Dr. Margaret McNeese, the medical director
of the CAC, reviewed the complainant=s records.  The medical exam revealed that a portion of
the complainant=s hymen was missing, which indicated there
had been an injury consistent with sexual activity, having occurred over a
period of time.  McNeese stated it was
unusual to see an injury of this degree, even among children seen by the
CAC.  

Appellant testified in his defense.  He testified that although he did not want
the complainant to see Francisco because he was older, she continued to do
so.  Appellant testified that he took the
complainant out of school because Rosalinda was supposed to come get her, but
she never came.  Appellant did not take
the other children out of school. 
Appellant explained that he took the children to California because he
was trying to separate the complainant and Francisco.  After he learned the police were looking for
him, appellant went to Mexico for about two months.  Appellant claimed he only wanted to visit his
mother whom he had not seen in twenty years. 
He denied ever having sex with the complainant and stated that he has
been impotent since 1997.  Appellant=s girlfriend,
since December 2001, also testified appellant was impotent.  Appellant=s girlfriend has a
prior conviction for theft.

Both the United States and Texas
Constitutions guarantee an accused the right to assistance of counsel.  See U.S. Const. amend. VI; Tex.
Const. art. I, ' 10; Tex.
Code Crim.. Proc. Ann. art. 1.05 (Vernon 1977).  The right necessarily includes the right to
reasonably effective assistance of counsel. 
Strickland v. Washington, 466 U.S. 668, 686 (1984).  The United States Supreme Court has
established a two‑prong test to determine whether counsel is
ineffective.  Id.  Appellant must first demonstrate his counsel=s performance was
deficient and not reasonably effective.  Id.
at 688B92.  Thereafter, appellant must demonstrate the
deficient performance prejudiced his defense. 
Id. at 693.  Essentially,
appellant must show that his counsel=s representation
fell below an objective standard of reasonableness, based on prevailing professional
norms, and there is a reasonable probability that, but for his counsel=s unprofessional
errors, the result of the proceeding would have been different.  Id.; Valencia v. State, 946
S.W.2d 81, 83 (Tex. Crim. App. 1997).








Judicial scrutiny of counsel=s performance must
be highly deferential and we are to indulge the strong presumption that counsel
was effective.  Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
We assume counsel=s actions and decisions were reasonably
professional and that they were motivated by sound trial strategy.  Id. 
Moreover, it is appellant=s burden to rebut
this presumption, by a preponderance of the evidence, via evidence illustrating
why trial counsel did what he did.  Id.  Any allegation of ineffectiveness must be
firmly founded in the record and the record must affirmatively demonstrate the
alleged ineffectiveness.  McFarland v.
State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).

If appellant proves his counsel=s representation
fell below an objective standard of reasonableness, he must still affirmatively
prove prejudice as a result of those acts or omissions.  Strickland, 466 U.S. at 693; McFarland,
928 S.W.2d at 500.  Counsel=s errors, even if
professionally unreasonable, do not warrant setting the conviction aside if the
errors had no effect on the judgment.  Strickland,
466 U.S. at 691.  Appellant must prove
that counsel=s errors, judged by the totality of the
representation, denied him a fair trial. 
McFarland, 928 S.W.2d at 500. 
If appellant fails to make the required showing of either deficient
performance or prejudice, his claim fails. 
Id.

Appellant first complains that his trial
counsel was ineffective for failing to object to victim-impact testimony by the
complainant during the guilt-innocent phase of the trial because such testimony
could only serve to inflame the jury=s passions against
him.  The complainant testified that she
is having problems due to appellant=s conduct: she is
not doing well in school; she is not happy; she requires a high level of care;
and she has been diagnosed with depression. 









The complainant testified that she
attempted suicide on four occasions because she Acan=t handle
everything that=s went [sic] on in my life and to me, it=s hard for me to
do it, but for me hurting on myself it releases pain that comes out of me.@  In the first suicide attempt, the complainant
started Ajabbing@ at a nail
sticking out of a wall with her vein.  In
her second suicide attempt, she wrapped the cord of a hair dryer around her
neck and tied it to a sink.  In her third
suicide attempt, the complainant tied a string around her neck and she stopped
breathing.  In her fourth suicide
attempt, the complainant cut herself with a razor.

          The State contends the evidence
concerning the effect of appellant=s repeated sexual
assaults of the complainant was admissible to reveal the truth of the fact that
the sexual assaults actually took place, that they were committed by someone in
a close parental relationship with the complainant, and that they were not
otherwise committed by a casual boyfriend. 
Evidence of a sexual assault victim=s emotional state
is not relevant in the guilt-innocence phase of the trial unless the victim=s lack of consent
is in dispute because such evidence does not tend to prove guilt.  Brown v. State, 757 S.W.2d 739, 740B41 (Tex. Crim.
App. 1988).  The complainant being too
young to consent and appellant denying any sexual activity, consent was not at
issue and the evidence was not relevant to establish appellant=s guilt.  Id.

          Appellant, however, has failed to show
that the results of the proceedings would have been different.  The State suggests that in reaching its
verdict the jury more probably utilized the testimony of the complainant and
Veronica that appellant repeatedly sexually assaulted the complainant over a
long period of time than any evidence of depression.  We agree. 
The jury heard detailed evidence that appellant sexually assaulted the
complainant on a continuous basis starting when she was thirteen years old,
treated her differently from the other children, pulled her out of school, and
told her he wanted her to be his wife.  See
Wilson v. State, 15 S.W.3d 544, 554B55 (Tex. App.CDallas 1999, pet.
ref=d) (assuming that
trial counsel should have objected to victim-impact testimony during guilt
innocence phase of sexual assault trial, record did not show reasonable
probability that outcome of trial would have been different where the
complainant identified appellant as her assailant, she found towel belonging to
appellant in her car, and license plate number she wrote down was similar to
that on appellant=s car). 
Moreover, the prosecutor never referred to the complainant=s emotional trauma
or suicide attempts in his jury argument during the guilt-innocence stage of
the trial.  Having failed to demonstrate
prejudice, appellant=s contention is overruled.








Appellant also claims his attorney rendered ineffective
assistance by failing to object to hearsay testimony during the punishment
phase of the trial that he had HIV and may have infected the complainant.  Appellant specifically complains of the
following exchange between the complainant and the prosecutor:

Q.      Did
you ever have to go down to a doctor=s office, you know, besides talking to people about
depression and things?

A.      Yes.

Q.      What
did you go to the doctor for?

A.      I
go to the doctor every three months.

Q.      Okay.

A.      Because
they said that Tomas was diagnosed with HIV, so they said in order for me to
take care of me I would have to go to the doctors every three months to make
sure that I don=t get it.

Q.      So
when you go B when you go every three months
what do they do?

A.      They
take blood from me.

Q.      Okay.  

And to do know what they do with that?

A.      No.

Q.      Okay.  

But you go every three months for that?

A.      Yes.

Q.      Now,
do you know if Tomas has HIV?

A.      No.  They said that they had a record when he went
to doctors once and that it was found in his system, that he had HIV.

Q.      Do
you know what HIV is?

A.      A
disease that could kill you.  

Q.      Okay.

How do you feel about all of that,
knowing that?

A.      It
makes me scared.  The first time I found
out I started crying because I didn=t know what to do.








Q.      Okay.

But aside from the fact that C.P.S.
is checking you for it, did Tomas ever tell you he had HIV?

A.      No.

Q.      So
you are just going for the test, you don=t know for sure, do you?

A.      No.

During cross-examination of the complainant, appellant=s counsel elicited
the following testimony:

Q.      Now,
nobody has told you for sure that Tomas had HIV, nobody knows that for a fact,
do they?

A.      No,
but the doctors had tested him.  He had
went to a clinic.

Q.      But
nobody has told you, not even C.P.S., that he has H B that he has HIV, do they B have they?

A.      No.  But the doctors had told C.P.S. that, and
when C.P.S. had told that, they told me and they tell me that I just need to
make sure, for my protection, I need to go and keep taking tests.

Q.      I
understand that.  

But nobody has told you for sure that he has HIV?

A.      No that I know of.

Article 21.31(a) of the Texas Code of
Criminal Procedure excludes from evidence the fact of court-ordered AIDS and
HIV testing of the accused, as well as the results, when the evidence is
offered by the State.  Harris v. State,
996 S.W.2d 232, 238 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).  Article 21.31(a)
is not applicable where the fact of AIDS or HIV testing involves the
complainant.  Id. & n.1.  Here, there is no evidence that appellant was
ordered by the trial court to undergo AIDS or HIV testing.  Thus, article 21.31(a) is not applicable in
this case.  See id. (observing
there was no evidence article 21.31(a) was invoked because trial court did not
order AIDS or HIV testing of defendant). 









The admissibility of evidence at the
punishment stage of a non-capital felony offense is largely a function of
policy rather than relevancy because there are no discrete factual issues to be
determined.  Hunter v. State, 799
S.W.2d 356, 359 (Tex. App.CHouston [14th
Dist.] 1990, no pet.) (citing Murphy v. State, 777 S.W.2d 44, 63 (Tex.
Crim. App. 1988) (plurality op. on reh=g)).  Article 37.07, ' 3(a) of the Texas
Code of Criminal Procedure allows the State and the accused to introduce any
evidence subject to the Rules of Evidence, A>as to any matter
the court deems relevant to sentencing, including the prior criminal record of
the defendant, his general reputation and his character.=@  Id. (quoting Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(a) (Vernon
1981)).  Evidence related to the
circumstances of the offense or the defendant before or at the time of the
offense is admissible at the punishment phase. 
Id. at 359B60. 
One such circumstance is the degree of the victim=s injury,
including future consequences due to the injury, A>so long as the
fact finder may rationally attribute moral culpability to the accused for that
injury.=@  Id. at 360 (quoting Miller-El v.
State, 782 S.W.2d 892, 896 (Tex. Crim. App. 1990) (en banc)).  

In Hunter, which involved the
offense of aggravated sexual assault of a child, the complainant=s grandmother
testified during punishment that the appellant had tested positive for the AIDS
virus and stated that the complainant would Abe going back . .
. to be tested for AIDS.@  Id.
at 359.  We concluded whether the accused
is infected with AIDS or HIV is a Aviable concern@ at the punishment
stage of an aggravated sexual assault trial and such testimony, therefore, is
admissible as a circumstance of the offense and may be appropriately considered
by the jury Aas a potential >long term effect
of the injury.=@  Id. at 360 (quoting Miller-El,
782 S.W.2d at 895).  Thus, we conclude
appellant=s trial counsel=s performance was
not deficient in failing to object to the complainant=s testimony that
he possibly had HIV or that she has to be tested for HIV.  








Moreover, appellant also has not shown
prejudice.  Appellant contends the
complainant=s testimony was essentially that by
periodic testing, she would Alive a nightmare
of uncertainty@ and appellant Asubjected her to
the significant possibility of a slow and painful death, preceded by an
extended period@ of not knowing whether she was
infected.  Although appellant acknowledges
that his fifteen-year sentence is in the lower range of punishment for a first
degree felony, he asserts the testimony was prejudicial because he was eligible
for probation. 

The prosecutor never mentioned the HIV
issue in his closing argument.  Instead
the prosecutor told the jury AIt=s not a probation
case,@ focusing on the
prolonged and repeated abuse, the controlling environment created by appellant,
that appellant was hiding the complainant by pulling her out of school,
appellant=s manipulative treatment of a
thirteen-year-old girl, appellant=s treating the
complainant Abetter@ by buying her
things in exchange for sex, and appellant=s refusal to take
responsibility for his actions.[1]  Having failed to establish that his trial
counsel=s performance
during the punishment phase of the trial was either deficient or prejudicial,
the appellant=s final issue is overruled.  

Accordingly, the judgment of the trial
court is affirmed.  

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

 

 

 

Judgment
rendered and Opinion filed July 27, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  Appellant
testified during the punishment phase of his trial.