Affirmed and Memorandum Opinion filed December 18, 2008








Affirmed
and Memorandum Opinion filed December 18, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00121-CR

_______________

 

RUSSELL MOSS GEORGE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 262nd District Court

Harris County, Texas

Trial Court Cause No. 1120329 

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

A jury
convicted Russell Moss George of possession of a controlled substance and,
after finding two enhancement paragraphs Atrue,@ sentenced him to 37 years= confinement in the Texas Department
of Criminal Justice, Institutional Division.  In three issues, appellant
asserts that the trial court erred in denying (a) his motion to suppress
evidence and (b) his Batson challenge to the jury.  We affirm.

 








I.  Background

Appellant
was indicted for possession with intent to deliver more than four grams and
less than two hundred grams of  a controlled substance, methamphetamine.  He
filed a pre-trial motion to suppress the drugs discovered in his motorcycle on
the basis that the arresting officer lacked probable cause to arrest him and
search his vehicle under federal and state constitutional principles.  The
trial court did not hold a pre-trial hearing on his motion to suppress and
instead considered his motion during his trial.  

According
to Deputy Walter Dyches from the Harris County Precinct 5 Constable=s Department, on June 10, 2007, he
was patrolling a toll road in northwest Harris County, looking for E-Z Tag
violators.  He saw a black motorcycle go through the E-Z Tag lane and a red
signal lit, indicating that the vehicle had no E-Z Tag. Dyches proceeded to
follow the motorcycle while he called into dispatch with the vehicle=s license plate number.  Dispatch
responded that the E-Z Tag assigned to that license plate had been reported
stolen.  Dyches then initiated a traffic stop of the motorcycle for the offense
of failure to pay a toll.








The
driver of the motorcycle, identified as appellant, pulled to the side of the
road.  Dyches got out of his marked patrol vehicle and approached appellant,
who dismounted his motorcycle.  Dyches requested both appellant=s driver=s license and insurance card.  Dyches
testified, AAt this point, I could physically observe that [appellant] was nervous. 
He was shaky, sweaty, and wouldn=t make eye contact.  When I did ask
him for his driver=s license, it took him an extremely long time to get his
license out of his wallet.@  When appellant opened the storage compartment underneath
his motorcycle=s seat to get his insurance card out, Dyches glanced into the compartment
for Asafety reasons.@  According to Dyches, he saw a clear
cellophane bag with a white substance in it.  Dyches, having been trained in
recognizing Astreet drugs@ such as marijuana, methamphetamine, and heroin, stated that
he believed that appellant possessed an illegal narcotic, namely
methamphetamine.  He also testified that he believed appellant was likely under
the influence of drugs because of his behavior, e.g., sweating and
excessive nervousness.

Based on
his observations, Dyches asked appellant if he had anything Aillegal@ in his motorcycle.  Dyches testified
that appellant responded, AI don=t think so.@  According to Dyches, he then asked appellant if he could
search his motorcycle, and appellant verbally consented.  Dyches explained that
appellant informed him about several additional bags of methamphetamine that
were hidden inside a yellow marker found in the storage compartment beneath the
seat of appellant=s motorcycle.   Dyches=s search resulted in the discovery of
a small amount of marijuana, a few Ecstasy pills, and numerous baggies of
methamphetamine. 

On
cross-examination, Dyches stated that he did not recall appellant showing him a
second E-Z Tag during his encounter with appellant.  Dyches denied that
appellant told him he had replaced the stolen E-Z Tag associated with his
license plate number.  Dyches did, however, acknowledge that he did not perform
any field sobriety testing on appellant that evening.

At the
conclusion of Dyches=s testimony, the trial court excused the jury to allow
appellant to testify regarding the suppression motion.  Appellant testified
that he never consented to a search.  He also stated that he immediately closed
the storage compartment on his motorcycle after removing his insurance
information.  He further explained that his old E-Z Tag had been stolen, but
that he had obtained a replacement tag, which was stored in his under-seat
compartment.  According to appellant, he provided Dyches with his new E-Z Tag
when he gave him the insurance documents.  After considering the testimony and
arguments from the suppression hearing, the trial court denied appellant=s motion to suppress.








The jury
found appellant guilty of possession of more than four and less than two
hundred grams of methamphetamine.  The jury also found two enhancement
paragraphs Atrue,@ and sentenced appellant to thirty-seven years= confinement in the Institutional
Division of the Texas Department of Criminal Justice.  The trial court rendered
judgment on the jury=s verdict, and this appeal timely ensued.

II.  Issues Presented

In his
first and second issues, appellant contends the trial court erred in denying
his motion to suppress evidence because there was no probable cause to arrest
him and search his vehicle incident to arrest, in contravention of his state
and federal constitutional rights.  In issue three, appellant argues that the
trial court erred in denying his Batson challenge to one of the jurors
struck by the State.

III.  Analysis

A.        Motion to Suppress

We
review a trial court=s ruling on a motion to suppress A>in the light most favorable to the
trial court=s ruling.=@  Wiede v. State, 214 S.W.3d
17, 24 (Tex. Crim. App. 2007) (quoting State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006)).  Because the trial court observes the demeanor and
appearance of witnesses, it is the Asole trier of fact and judge of the
credibility of witnesses and the weight to be given to their testimony.@  State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000) (en banc).  When reviewing a trial court=s denial of a motion to suppress, we
afford almost total deference to the court=s express or implied determination of
historical facts, while reviewing the court=s application of search and seizure
law to the facts de novo.  Wiede, 214 S.W.3d at 25.  Where, as
here, there are no written findings in the record, we uphold the ruling on any
theory of law applicable to the case and assume the trial court made implicit
findings of fact in support of its ruling so long as those findings are
supported by the record.  Ross, 32 S.W.3d at 855B56.  

 








Consent
to search is a well-established exception to the state and federal
constitutional requirements of probable cause and a warrant.  Maxwell v.
State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (en banc).  AThe validity of an alleged consent to
search is a question of fact to be determined from all the circumstances.@  Id.  The State must prove
validity of the consent by a preponderance of the evidence to satisfy the
federal constitution, but the Texas Constitution requires proof by clear and
convincing evidence.  Id.

In his
briefing, appellant argues this issue as follows:

[T]he facts
presented clearly failed to demonstrate that the State of Texas introduced any
evidence that a crime had been committed in the presence of the arresting
officer nor did the officer testify that he had a warrant for the arrest or
search of the [a]ppellant=s vehicle.  The defendant testified that he did not
give the office permission to search his vehicle.  Further, he related that he
did have an EZ [T]ag on his motorcycle.  

(record citations
omitted).  We disagree with appellant=s arguments for several reasons.

Appellant
has overlooked the fact that a law enforcement officer may stop a vehicle when
that officer has reasonable suspicion to believe that a traffic violation has
occurred.  Goudeau v. State, 209 S.W.3d 713, 716 (Tex. App.CHouston [14th Dist.] 2006, no pet.)
(citing Terry v. Ohio, 392 U.S. 1, 22 (1968)).  Here, Dyches testified
that he saw appellant commit a traffic violation, failure to stop and pay a
toll.[1]  Thus, he was
authorized to stop appellant=s vehicle.  While appellant=s vehicle was stopped, Dyches became
suspicious about appellant=s exceedingly nervous behavior and observed what he believed
to be an illegal narcotic in the open storage area underneath appellant=s seat.[2]









Based on
appellant=s suspicious behavior and Dyches=s observation of what he believed to
be methamphetamine in appellant=s storage compartment, Dyches testified that he asked
appellant if he could search his vehicle.  Dyches stated that  appellant
acquiesced to the search.  Law enforcement officers may conduct a valid
warrantless search if a suspect voluntarily consents.  See Armendariz v.
State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (en banc) (ASince the search followed a
legitimate traffic stop and was carried out with appellant=s consent, it was reasonable under
the Fourth Amendment.@); Maxwell, 73 S.W.3d at 281.  Such consent to search
may be oral.  Manzi v. State, 56 S.W.3d 710, 719 (Tex. App.CHouston [14th Dist.]), aff=d, 88 S.W.3d 240 (Tex. Crim. App. 2002).  

In sum,
although appellant denies having consented to the search, the trial court was
the Asole trier of fact and judge of the
credibility of witnesses and the weight to be given to their testimony.@  Ross, 32 S.W.3d at 855.  By
denying appellant=s motion to suppress, the trial court implicitly found Dyches=s testimony more credible than
appellant=s.  This implicit finding is supported by the record.  Viewing the
evidence in the light most favorable to the trial court=s ruling and deferring to the trial
court=s implicit fact-findings, we conclude
that the trial court did not err in denying appellant=s motion to suppress.  We therefore
overrule his first and second issues.

B.        Batson Challenge

An
accused has a right to a trial by a jury whose members are selected in a
racially‑neutral, nondiscriminatory manner.  Batson v. Kentucky,
476 U.S. 79, 85B86 (1986); Tex. Code
Crim. Proc. Ann. art. 35.261 (Vernon 2006) (codifying the Batson standard). 
We review a trial court=s ruling on a Batson challenge in the light most
favorable to the ruling, giving deference to the trial court=s assessment of credibility and
demeanor. Williams v. State, 804 S.W.2d 95, 101 (Tex. Crim. App. 1991)
(en banc).








A Batson
challenge generally gives rise to a three‑step process.  First, the
defendant must make a prima facie case that a veniremember was peremptorily
excluded on the basis of race.  Jasper v. State, 61 S.W.3d 413, 421
(Tex. Crim. App. 2001). Second, the prosecution must come forward with race‑neutral
reasons for the peremptory strike.  Simpson v. State, 119 S.W.3d 262,
268 (Tex. Crim. App. 2003). Finally, the defendant then has the opportunity to
rebut the State=s explanations.  Id.  If, however, the trial court
immediately inquires whether the proponent of the strike had a
non-discriminatory purpose, we must assume that the opponent has made his prima
facie case of purposeful discrimination and address only the second and third
steps of the process.  Watkins v. State, 245 S.W.3d 444, 447 (Tex. Crim.
App. 2008).  The burden of persuasion remains with the defendant to prove
purposeful discrimination by a preponderance of the evidence.  Id.

A trial
court=s decision on whether the opponent
has proved a Batson claim turns, in part, on observations made during
the voir dire examination.  Young v. State, 826 S.W.2d 141, 145 (Tex.
Crim. App. 1991) (en banc).  We may not overturn the trial court=s resolution of the Batson issue
unless, in light of the entire voir dire record, it is clearly erroneous.  Watkins,
245 S.W.3d at 447B48.   A[A] trial court=s conclusion that a facially
race-neutral explanation for a peremptory challenge is genuine, rather than a
pretext, [must be examined] with great deference . . . .@  Id. at 448.  We may reverse
only if we are left with the Adefinite and firm conviction that a mistake has been
committed.@ Hill v. State, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992) (en
banc) (quoting U.S. v. Hernandez, 887 F.2d 564, 567 (5th Cir.1989)).

 








Here,
after the jury was selected, appellant=s trial counsel made a Batson
objection, alleging that venire member 30 had been struck based on her raceBHispanic.[3] 
When prompted by the trial court, the prosecutor responded that juror number 30
had listed her occupation as a legal secretary or legal assistant and that she Ajust [didn=t] normally put lawyers or legals@ on the venire panel.  The trial
court found this explanation to be racially neutral.[4] 
Because the State provided a facially valid, race-neutral reason for striking
the challenged panel member, the burden shifted back to appellant to establish
that the State=s explanation was a sham or pretext for discrimination.  Simpson,
119 S.W.3d at 268.

Appellant
did not rebut the State=s race‑neutral explanations or otherwise attempt to
establish that its explanation for striking panel member 30 was pretextual.  See
Johnson, 68 S.W.3d at 649.  In addition, the record does not reflect that
any non-Hispanic panel members who shared this particular panel member=s profession were not subject to a
peremptory strike by the State.  See, e.g., Miller-El v.
Dretke, 545 U.S. 231, 241 (2005) (AIf a prosecutor=s proffered reason for striking a
black panelist applies just as well to an otherwise‑similar nonblack who
is permitted to serve, that is evidence tending to prove purposeful
discrimination . . . .@). Under these circumstances, appellant has not established,
by a preponderance of the evidence, that this veniremember was excluded on the
basis of race.  We therefore overrule appellant=s third issue.

 

 








IV.  Conclusion

We
conclude that the trial court did not err in overruling appellant=s motion to suppress.  Further,
appellant has not established that veniremember 30 was excluded on the basis of
race. We therefore overrule appellant=s three issues and affirm the
judgment of the trial court.  

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed December 18, 2008.

Panel consists of Chief Justice
Hedges and Justices Guzman and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  A person
commits a misdemeanor offense if, while operating a vehicle on a toll road, he
fails or refuses to pay a toll.  See Tex.
Transp. Code Ann. '  284.070(a) (Vernon 2008).





[2]  Appellant
admitted that he opened the storage compartment underneath the seat of his
motorcycle to retrieve his insurance documents.





[3]  At trial,
appellant also noted venire member 35 as part of his Batson challenge. 
The State responded that panel member 35 had a prior arrest for cocaine use. 
The trial court agreed that was a nonracial reason for striking that member. 
On appeal, however, appellant only challenges the prosecutor=s proffered race-neutral explanation regarding juror
number 30.





[4]  Generally,
striking a juror based on occupation only does not violate Batson.  See
Harris v. State, 996 S.W.2d 232, 235 (Tex. App.CHouston [14th Dist.] 1999, no pet.).