COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

LARRY ANTHONY HARRIS,                                No. 08-11-00117-CR

§

      Appellant,                                          Appeal from

§

v.                                                   271st District Court

§

THE STATE OF TEXAS,                                  of Wise County, Texas

§

      Appellee.                                           (TC # CR14968)

§

**O P I N I O N**

Larry Anthony Harris appeals his conviction for the felony offense of intoxication manslaughter. A jury found Appellant guilty and assessed punishment at twenty years' imprisonment in the Texas Department of Criminal Justice, Institutional Division. For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

Appellant was charged by indictment for intoxication manslaughter after a motor vehicle collision in the early morning hours of November 1, 2003, which resulted in the death of Appellant's girlfriend, Angela Carney. Appellant pled not guilty to the charges and the case proceeded to a jury trial.

## *Witnesses from the Bar*

On October 31, 2003, Zachary Butler was working as a bartender at Judge Bean's Restaurant & Cantina in Keller, Texas. He testified that Appellant had been coming in regularly for approximately a year. Appellant opened a bar tab at 3:49 p.m. Butler arrived at work around 4 p.m. and Appellant was already at the bar with his co-worker, Carl Kirby. Butler took over serving them until Appellant closed out his tab at 6:39 p.m. During this three hour period, Appellant made ten alcoholic purchases. Butler testified that Appellant personally consumed six of the ten, all margaritas. He then left the bar.

Later that night, Appellant returned to the bar with Carney and opened a bar tab at 10:19 p.m. Appellant ordered three margaritas, two beers, and three "orgasm shots." Carney drank the shots, but Appellant consumed at least one beer and all three of the margaritas. Carney became intoxicated quickly, falling off a bar stool twice and then revealing her breast implants to the waitresses. Appellant lifted her shirt and began "doing some licking thing to [her breast implants]." Since Appellant was a regular customer, Butler was familiar with his behavior but his lewd conduct that night was not normal. At that point, Butler cut them off and refused to serve them any more alcohol. By this time, Kirby had returned to the bar. Butler asked Kirby if he could help Appellant and Carney get home.

Kirby also testified to the events that transpired. He finished work between 3:30 and 4:00 p.m. and went with Appellant to Judge Bean's to have a beer, something he did almost every day. Kirby and Appellant arrived in separate vehicles. Kirby left after about an hour but Appellant stayed at the bar. Kirby knew Appellant had been drinking but he could not recall exactly how many drinks Appellant consumed. Later that evening, Kirby fought with his girlfriend and left their house. When he saw Appellant's vehicle parked outside of Judge Bean's

around 10:30 p.m., Kirby went back to the bar. Appellant and Carney were already intoxicated and became increasingly more so.

Kirby also witnessed Appellant's and Carney's lewd behavior. He heard the bartender cut them off and ask them to leave. Kirby asked Appellant if he "could either get him a place, follow him, get his keys from him; anything to protect him," but Appellant responded by telling Kirby "FU." Kirby helped Appellant put Carney into the front passenger seat of their vehicle. At the time, she "couldn't do anything," and was falling in and out of sleep. Appellant sat in the driver's seat behind the wheel and Kirby went to his own vehicle. Kirby watched Appellant drive away from the bar and then followed.

A while later, Appellant pulled over to the side of the road and stopped. He got out of the driver's seat and walked back to Kirby's car to give him directions. Kirby found Appellant's actions surprising because, while Kirby admittedly needed directions, the two men had been talking on their cell phones while driving. In any event, Kirby testified Appellant went back to his vehicle, sat again in the driver's seat, and drove off.

Still following behind Appellant, Kirby came upon the accident immediately after it occurred. Initially Kirby saw taillights and thought Appellant had pulled over again. When he got closer, he realized that Appellant had failed to negotiate a sharp left turn and crashed. The engine was still running and Appellant was asleep in the driver's seat, snoring. Carney was in the passenger seat with her head leaning out the window. Her face had been "cut off" by glass. Kirby did not observe any damage to the driver's side but there was shattered glass everywhere on the passenger's side. Appellant did not appear to be injured and all of the blood was running down the passenger side door. Kirby repeatedly slapped Appellant as hard as he could until Appellant awakened. Appellant staggered around until getting into Kirby's car. Kirby then

pulled Carney out of the car and laid her down in the back seat of his car. Kirby was unfamiliar with the area and asked Appellant how to get to the nearest hospital. Appellant replied there was no hospital and instead directed Kirby to his mother's house. According to Kirby's testimony, both his cell phone and Appellant's cell phone had somehow been misplaced during the wreck so they were unable to call 911.

When they arrived at her house, Appellant's mother helped Kirby carry Carney out of the vehicle and lay her on the ground. At that point Kirby got back in his vehicle and left. "There was nothing more that I could do for her." The following morning, Appellant called Kirby's girlfriend's cell phone and left a message for Kirby. A tape recording of the message Appellant left was introduced into evidence at trial.

Billie McCarty also testified at trial. On October 31, 2003 at approximately 10 p.m., he went to Judge Bean's to pick up his son who was working as a dishwasher/host. McCarty sat at the bar and ordered a beer while he waited for his son to finish work. It was a slow night, and only two or three other people were there when he arrived. He noticed "a couple and their friend." He did not know the couple personally, but he had seen them at Judge Bean's once or twice before. However, he did recognize Carl Kirby, an acquaintance with whom he'd had drinks in the past. McCarty described the couple as "pretty inebriated" and "[t]hey were drunk, in my opinion." He witnessed the male "trying to show off his girl's breast implants," and then saw him unzip his pants and try to unzip his girlfriend's pants. At that point, the couple was asked to leave the bar. McCarty and his son walked out behind the couple. McCarty saw Kirby help Appellant put the woman in the passenger seat. He also watched the male get behind the wheel. Before McCarty pulled away, he yelled at the man "to be careful . . . because they were drunk and Keller cops was going to nail them." He did not see the man actually drive the car.

*Testimony from Medical and Law Enforcement Personnel*

Appellant's mother called 911 at approximately 1:51 a.m. Carney was transported by helicopter to John Peter Smith Hospital in Fort Worth. Appellant was transported by ambulance to Wise Regional Hospital. He was admitted at 2:54 a.m. and discharged at 4:10 a.m.

Vivian Miller was the emergency room nurse who treated Appellant. She asked Appellant how much he'd had to drink and Appellant responded "a lot." Appellant had a strong odor of alcohol, slightly slurred speech, red eyes, and he staggered. Miller believed him to be intoxicated.

State Trooper Colby Langford investigated the scene of the accident and located Appellant's vehicle "off into the barrow ditch" on a curve. Langford opined that the driver failed to negotiate a left turn. The vehicle struck a metal barbed wire fence post causing the post and wire to protrude through the passenger side window and strike the passenger on the left side of the head. Langford's report indicated that, "passenger died as a result of her injuries," and "driver was intoxicated." This conclusion was based on his observations at the scene and his training and experience.

Carney later died at the hospital. Chief Deputy Medical Examiner Dr. Marc Krouse testified that the cause of death was blunt force head trauma due to motor vehicle collision with a fixed object. Based on his investigation and autopsy, Dr. Krouse believed Carney was hanging out the passenger side window at the time of the accident. She had abrasions, scratches, and gouges on her torso and extremities, consistent with barbed wire contact.

## LEGAL SUFFICIENCY

In Issue One, Appellant challenges the legal sufficiency of the evidence supporting his conviction for intoxication manslaughter. Specifically, he complains that the evidence was

legally insufficient to prove beyond a reasonable doubt: (1) that he was the driver; and (2) that he was intoxicated.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). We do not resolve any conflict of fact or assign credibility to any witness, as it was the function of the trier of fact to do so. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). In other words, this standard of review fully acknowledges and accepts the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. Our duty is therefore limited to determining if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843. Further, the standard of review is the same for both direct evidence and circumstantial evidence cases. *Geesa*, 820 S.W.2d at 158; *see also Blackman v. State*, 350 S.W.3d 588, 595 (Tex.Crim.App. 2011)("Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.").

*Applicable Law*

A person commits intoxication manslaughter if the person (1) operates a motor vehicle in a public place, (2) is intoxicated, and by reason of that intoxication causes the death of another by accident or mistake. TEX.PENAL CODE ANN. § 49.08 (West 2011). Appellant contends the evidence is legally insufficient to support two elements of the offense: (1) that he operated a motor vehicle; and (2) that he was intoxicated. The Texas Penal Code does not define the term "operated;" however, in assessing whether the evidence is sufficient to support the operation of a motor vehicle element, courts examine all of the evidence to determine whether it supports a finding that Appellant exerted personal effort to cause the vehicle to function. *Denton v. State*, 911 S.W.2d 388, 390 (Tex.Crim.App. 1995). Further, while driving does involve operation, operation does not necessarily involve driving. *Denton*, 911 S.W.2d at 389. "Intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. TEX.PENAL CODE ANN. § 49.01(2)(A).

*Who Was Driving?*

Appellant maintains that we should not consider Kirby's testimony and, that if his testimony is excluded, the State's evidence was merely circumstantial and therefore legally insufficient. This argument is premised upon the possibility that either Carney or Kirby actually drove the car. He contends that no rational jury could have believed Kirby because "[i]t defies human nature that a person could have been involved with the circumstances both before, during, and after an event like the accident here and not learn that the victim had died." Next, he argues that because "it was made clear by both parties that [Kirby] had serious felony charges pending against him in Denton County at the time of trial," his testimony should be regarded as that of an

accomplice witness, requiring independent corroborative evidence. We must view the evidence in a light most favorable to the jury's verdict and determine whether any rational jury could have reached the same conclusion. Here, as the fact finder, the jury was free to believe all, some, or none of Kirby's testimony and we may not substitute our own judgment. Even setting Kirby's testimony aside, other evidence supports the jury's conclusion. Billie McCarty testified that he saw a couple leave Judge Bean's with Kirby. He watched as the man and Kirby put the woman in the passenger seat. The man climbed into the driver's seat, and Kirby walked to his own car. Medical records and police investigative reports were introduced to show that Carney's injuries were consistent with riding in the passenger seat. Appellant suffered only minor injuries, consistent with the testimony that, unlike the passenger's side of the vehicle, the driver's side suffered little to no damage. From all the evidence presented a rational jury could have concluded that Appellant was operating the vehicle at the time of the accident which caused his girlfriend's death.

### *Was He Intoxicated?*

Next, we address Appellant's assertion that the evidence is legally insufficient to prove he was intoxicated. Several witnesses testified that they witnessed Appellant consume alcohol and believed Appellant was intoxicated. Besides Kirby, Butler and McCarty testified to the lewd behavior Appellant publicly displayed which resulted in Butler asking them to leave the bar. The nurse recounted Appellant's admission that he drank "a lot" of alcohol that night, and she believed him to be intoxicated. Based on the foregoing, a rational jury could have concluded not only that Appellant was operating the vehicle at the time of the accident, but that he was intoxicated while doing so. Because the evidence is legally sufficient to prove both the operation and the intoxication elements beyond a reasonable doubt, we overrule Issue One.

## IMPROPER JURY ARGUMENT

In Issue Two, Appellant complains that the prosecutor engaged in improper closing arguments during the guilt/innocence phase of trial. Specifically, he complains of the following excerpt:

> [PROSECUTOR]: The [Appellant] calls Carl. He has to leave a message on Carl's girlfriend [sic: phone], because we don't know where Carl's phone is. He leaves a message on her tape, on her phone, saying, call me. Carl, call me. We need to talk before you talk to anybody else.
>
> [DEFENSE COUNSEL]: Objection. I don't think he said that, your Honor.
>
> [THE COURT]: Counsel -- Overruled. The jury -- the jury will remember what he said.

Generally, there are four areas of proper jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *See Berry v. State*, 233 S.W.3d 847, 859 (Tex.Crim.App. 2007). To determine whether jury argument falls within one of the four permissible categories, we look to the entire record and assess the argument in context. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App. 1988); *Cole v. State*, 194 S.W.3d 538, 544 (Tex.App.--Houston [1st Dist.] 2006, pet. ref'd); *Van Zandt v. State*, 932 S.W.2d 88, 93 (Tex.App--El Paso 1996, pet. ref'd). A jury argument which exceeds the bounds of proper argument is not reversible error, unless, in light of the entire record, it is extreme or manifestly improper, violative of a mandatory statute, or injects new and harmful facts into the case. *McKay v. State*, 707 S.W.2d 23, 36 (Tex.Crim.App. 1985); *Harris v. State*, 996 S.W.2d 232, 237 (Tex.App--Houston [14th Dist.] 1999, no pet.). "However, if the State's argument falls within one of the four permissible categories previously enumerated, it does not constitute error." *Lange v. State*, 57 S.W.3d 458, 468 (Tex.App.--Amarillo 2001, pet. ref'd).

Here, the prosecutor's statements were a proper summation of the evidence. Kirby testified that Appellant called Kirby's girlfriend and left a voice message for Kirby on his girlfriend's phone. A tape of the message was admitted into evidence and played for the jury. In the message, Appellant urged Kirby to call him as soon as possible because they had to talk before they talked to anybody else. The prosecutor's argument was proper as it falls within one of the four permissible categories.

Even assuming for purposes of argument that the prosecutor's argument somehow misstated the evidence, Appellant must still demonstrate that the error affected his substantial rights. *Arnold v. State*, 234 S.W.3d 664, 674 (Tex.App.--Houston [14th Dist.] 2007, no pet.). A substantial right is affected when the improper jury argument has a substantial and injurious influence on the jury's verdict. *Id*. at 674. To determine whether an improper jury argument is harmful, we consider: (1) the severity of the misconduct or prejudicial effect; (2) any curative measures taken; and (3) the certainty of conviction or punishment assessed absent the misconduct. *Id*. In light of the abundance of evidence offered of Appellant's guilt, the certainty of his outweighs any potential harm. We overrule Issue Two and affirm the judgment of the trial court.

August 14, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

- 10 -