Charles Reginald ROBERTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00873–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 2, 1993.

Tony Aninao, Houston, for Appellant.

John B. Holmes, Jr., Timothy G. Taft, Craig Hughes, Houston, for Appellee.

Before HEDGES, COHEN and MIRABAL, JJ.

## OPINION

HEDGES, Justice.

After a jury found him guilty of delivery of cocaine, and the trial court found the enhancement paragraphs true, appellant was sentenced to 40–years confinement. We affirm.

On April 26, 1991, informant Don Myles contacted Houston Police Officer Rios with information that appellant wanted to sell

some drugs. Officer Rios and Myles met at a nearby parking lot and then drove around in an unmarked car looking for appellant. When Myles saw appellant walking down Richmond, he got out of the car. Myles told appellant that he knew someone who wanted to buy some crack cocaine. The two then met Officer Rios across the street in a Whataburger parking lot. Appellant asked Officer Rios what he wanted, and Officer Rios replied that he wanted a hundred dollars worth of rock cocaine. Officer Rios gave appellant fifty dollars, and appellant went to get the cocaine. When he returned, appellant handed Myles a napkin containing cocaine, and Myles handed the napkin to Officer Rios. After receiving the remaining fifty dollars from Officer Rios, appellant left. He was arrested shortly thereafter.

In point of error one, appellant contends that the trial court reversibly erred when it overruled an objection to a question by the State regarding appellant's reputation as a drug dealer. The State had called Myles, the confidential informant, as its first witness. After briefly questioning him about his background and asking him to identify appellant, the State asked Myles the following question:

[STATE'S ATTORNEY]: Mr. Myles, isn't it true that Mr. Roberts had a reputation in your neighborhood as being a drug dealer?

[APPELLANT'S ATTORNEY]: Objection, Your Honor.

THE COURT: Overruled.

[APPELLANT'S ATTORNEY]: At this point in time, Your Honor, we would object to any kind of character evidence that's being adduced by the assistant district attorney about this defendant when the defendant hasn't put his character in issue.

THE COURT: Overruled.

The State did not pursue an answer to the challenged question, and Myles never gave an answer.

◼ Generally, it is reversible error for the State to put the reputation of the accused in issue when he himself has not done so. TEX.R.CRIM.EVID. 404; *Smith v. State,* 659 S.W.2d 427, 429 (Tex.Crim.App.1983). "And

where the reputation of the accused is not in issue, the law prohibits the State from directly or indirectly attacking his reputation." *Smith,* 659 S.W.2d at 429 (citing *Freeze v. State,* 133 Tex.Crim. 595, 113 S.W.2d 539, 540 (1938). In this case, appellant had not put his own character in issue. Therefore, any response Myles might have given to the effect that appellant was known as a drug dealer would have been inadmissible.

◼ Appellant argues that although Myles never answered the State's reputation question, the mere asking of the question constituted harmful error. We agree that the asking of the question, even without a response, was error. *Smith,* 659 S.W.2d at 429. We must decide whether the unanswered question, though clearly erroneous, was harmful. Our analysis requires us to determine the extent, if any, to which the error contributed to the conviction or punishment of appellant. *Harris v. State,* 790 S.W.2d 568, 585 (Tex.Crim.App.1989); TEX. R.APP.P. 81(b)(2). Once we have isolated the error, we must ask "whether a rational trier of facts might have reached a different result if the error and its effects had not resulted." *Harris,* 790 S.W.2d at 588.

◼ In *Brokenberry v. State,* 788 S.W.2d 103, 105–106 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd) the appellate court reversed a conviction on the basis that the State had improperly injected the defendant's character into the case. In closing argument, the prosecutor pointed out that the defendant had called no character witness. After the trial court overruled the defendant's objection to this statement, the prosecutor repeated it. Finding that the statement was improper argument, the appellate court conducted a harm analysis and concluded that under TEX.R.APP.P. 81(b)(2), reversal was required. The court noted that only one of the two victims identified the defendant, his arrest did not take place immediately, and the positive identification of defendant by one of the victims was the only direct evidence linking him to the offense. The jury assessed his punishment at confinement for life. The error was compounded by the repeating of the statement, and the trial court's overruling of the defendant's objection gave the

statement an imprimatur of approval. The appellate court decided, in light of these factors and the record as a whole, that the improper character interjection by the State was harmful error.

By contrast, the record of this case persuades us that the asking of the improper question was harmless. The State asked the question only once and did not pursue the answer even after the trial court overruled appellant's objection. The question was never answered. The uncontroverted evidence establishes that appellant participated in a face-to-face constructive transfer of cocaine to Officer Rios. Two participants in the transaction identified him as the constructive transferor. He was arrested immediately after the illegal delivery. The trial court, not the jury, assessed his punishment. Appellant was not given the maximum sentence. These factors mitigate against a finding of harm. The only factor suggesting harm is the trial court's overruling of appellant's objection to the character question. Weighing these factors, we find that the asking of the character question by the State was harmless error. A review of the record as a whole persuades us that the mere asking of the question was not error of such magnitude that the jury's proper evaluation of the evidence was disrupted. *Harris*, 790 S.W.2d at 588.

We overrule point of error one.

In point of error two, appellant contends that the trial court erred in overruling his *Batson*[1] motion. We disagree.

For claims made under TEX.CODE CRIM.P.ANN. art. 35.261 (Vernon 1989) and *Batson*, we will reverse the trial court's finding of no purposeful discrimination only if it is "clearly erroneous." *Hill v. State*, 827 S.W.2d 860, 865 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992). We must view the record in the light most favorable to the trial judge's ruling; we will not disturb that ruling unless we are "left with a firm conviction that a mistake has been committed." *Harris v. State*, 827 S.W.2d 949, 955 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 381, 121

L.Ed.2d 292 (1992). In determining whether the trial judge's finding was clearly erroneous, we consider the challenged prospective juror's voir dire as a whole together with other relevant circumstances of the panel's voir dire. We will accord due deference to the trial judge's ruling. *Sterling v. State*, 830 S.W.2d 114, 118–19 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992).

The record indicates that four venire persons were black. Appellant's attorney exercised a peremptory strike to eliminate one black venire person. Another was struck for cause by the trial court on appellant's motion. One black male served on the jury. Appellant complains that the State improperly excluded the fourth black venire person, Ms. Holley, for racially-motivated reasons.

After the jury was selected, and before the venire was discharged, the following exchange occurred at the bench:

[APPELLANT'S ATTORNEY]: Your Honor, I believe on Juror No. 22, I believe; that's Ms. Holley, I believe she's sitting back there, may the record reflect that she appears to be a black female. And we would like the record to reflect that that juror was not struck by the defendant.

And at this time we would renew our *Batson* motion relative to that black female, Juror No. 22, and ask the Court to voir dire or make the prosecutor make known as to his alleged neutral reasons for striking that particular juror.

[STATE'S ATTORNEY]: Your Honor, during voir dire examination, Juror No. 22 indicated she might let sympathy affect her deliberations in reaching a verdict. The same sentiment was expressed by Juror No. 26—Mr. Lowery—who is a white male.

Therefore, the State would submit that it has submitted a racially neutral reason for striking No. 22 in that a white male was struck for that exact same reason.

[APPELLANT'S ATTORNEY]: May the record reflect that relative to Juror No. 3, who is on the jury, he also indicated that there might be some kind of sympathy

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.    1712, 90 L.Ed.2d 69 (1986).

factors in there. I believe he later indicated that it wouldn't affect his deliberations. But may the record reflect that that particular white male juror had a sympathy factor voiced during the voir dire but he was not struck on that basis by the prosecutor but the black female apparently was.

The court then overruled appellant's renewed *Batson* motion based on the State's peremptory strike of Ms. Holley.

During voir dire, the State's attorney asked the venire whether sympathy would interfere with a decision on guilt or innocence if the State proved its case to the jury's satisfaction beyond a reasonable doubt. The State peremptorily struck Ms. Holley from the jury because she stated that sympathy might influence her verdict. The State also struck Mr. Lowery, a white male, for the same reason. The State had attempted to have Mr. Lowery struck for cause for this reason, but the trial court denied the State's motion.[2]

■ Appellant argues that the State's reason for striking Ms. Holley was a pretext, because although juror number three, a white male, expressed sympathy concerns, the State did not strike him. The State's decision to strike some venire members who expressed sympathy concerns is not undermined by its failure to strike all members who expressed the same concerns. *See Cantu v. State*, 842 S.W.2d 667, 689 (Tex.Crim. App.1992), *cert. denied*, — U.S. —, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993) (stating "it is unlikely that two venirepersons on one panel will possess the same objectionable attribute or character trait in precisely the same degree. Such qualitative distinctions may cause a prosecutor to challenge one venireperson and not the other.").

■ Of the four black venirepersons, the State sought to exclude, and did exclude, only Ms. Holley, while appellant excluded two blacks from the jury. The State accepted more blacks on the jury than appellant. We have previously held "[i]f a prosecutor takes some jurors of a particular race and

rejects others, a trial judge may, in appropriate cases, infer that race was not the prosecutor's motive for the strikes, because others of the same race were accepted as jurors." *Jones v. State*, 845 S.W.2d 419, 422 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). In this case, the trial court may have taken into consideration the State's willingness to have the other three black venire persons serve on the jury. We cannot conclude from this record that the trial court's ruling was clearly erroneous.

We overrule point of error two.

In his fourth point of error, appellant complains that the trial court erred in admitting evidence of evading arrest, an extraneous offense. In his third point of error, appellant complains that the trial court erred by refusing to give a limiting instruction to the jury regarding this extraneous offense evidence.

On direct examination, Officer Peaco testified that appellant began to run when the police attempted to arrest him. Appellant's attorney objected, contending that because evading arrest was an extraneous offense, any evidence that appellant sought to evade arrest should be not be admitted.

■ We find that the trial court properly overruled appellant's objection. Evidence of escape from custody or flight to avoid arrest is generally held to be admissible on the issue of guilt. *McWherter v. State*, 607 S.W.2d 531, 534 (Tex.Crim.App. 1980); *Hunter v. State*, 530 S.W.2d 573, 575 (Tex.Crim.App.1975). The fact that circumstances of flight coincidentally implicate another crime does not render the evidence inadmissible. *McWherter*, 607 S.W.2d at 535–36; *Hunter*, 530 S.W.2d at 575. Furthermore, the trial court's refusal to give a limiting instruction to the jury about this evidence was not error. An inference of guilt may be drawn from a defendant's flight or escape. *McWherter*, 607 S.W.2d at 535. Therefore, a charge limiting the jury's consideration of certain testimony is not re-

---

**2.** During a discussion at the bench, Mr. Lowery stated at one point that if the State met its burden, he would not let sympathy for appellant influence his verdict. Later, Mr. Lowery hesitated, stating that it would "depend" whether sympathy would have an influence. The trial court then overruled the State's motion.

quired where testimony was admissible to prove a main fact in the case. *Id.*

We overrule points of error three and four.

In point of error five, appellant contends that the evidence was insufficient to sustain his conviction for delivery of a controlled substance by constructive transfer. He argues that because Myles, the confidential informant, actually transferred the cocaine, and appellant had no control over the cocaine as it was transferred from Myles to Officer Rios, there is insufficient evidence that he transferred the cocaine to Officer Rios as alleged in the indictment. Appellant further argues there is no evidence in the record that (1) appellant exercised any control over Myles and (2) appellant directed or ordered Myles, as his agent, to consummate the sale. We disagree.

■ When reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 163 (Tex.Crim.App.1991). This Court may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). If there is evidence that establishes guilt beyond a reasonable doubt, and the trier of fact believes that evidence, we are not authorized to reverse the judgment on insufficiency grounds. *Id.*

■ An offense is committed under TEX.HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon 1992) if the person knowingly or intentionally delivers a controlled substance. "Deliver" means to transfer a controlled substance, either actually or constructively, to another *regardless of whether there is an agency relationship.* TEX.HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon 1992). Constructive delivery is the transfer of a controlled substance, either belonging to an accused or under his control, by some other person or agency, at the instance and direction of the accused. *Swinney v. State,* 828 S.W.2d 254, 257 (Tex.App.—Houston [1st Dist.] 1992, no pet.). The very language of the statute refutes appellant's argument that constructive delivery required that Myles be appellant's agent rather than Officer Rios' agent. No agency relationship was required between any of the parties.

■ Constructive transfer is proved by showing that before the alleged delivery, the transferor had either direct or indirect control of the substance transferred, and the transferor knew of the existence of the transferee. *Swinney,* 828 S.W.2d at 257 (citing *Daniels v. State,* 754 S.W.2d 214, 220–22 (Tex.Crim.App.1988)). In this case, appellant had direct control over the cocaine before delivery, and he knew of Officer Rios' existence. Moreover, appellant asked Officer Rios what he wanted to buy and accepted the initial fifty dollars directly from the officer. When he returned with the cocaine, appellant instructed Myles to give the cocaine to Officer Rios. Appellant then asked Officer Rios if the cocaine looked good and demanded the remaining fifty dollars from him. The evidence is sufficient to support the jury's finding appellant guilty of delivery of controlled substance by constructive transfer.

We overrule point of error five.

In his sixth and final point of error, appellant complains that the trial court erred in overruling his objection to Officer Rios' bolstering the confidential informant's credibility.

■ "Bolstering" evidence is "any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit." *Cohn v. State,* 849 S.W.2d 817, 819 (Tex. Crim.App.1993).[3] On direct examination, Officer Rios testified, over objection, that Myles always gives him reliable, accurate, and thor-

---

**3.** The court in *Cohn* noted that "bolstering" was an objection predating the Texas Rules of Criminal Evidence and that the only apparent "bolstering" provisions in the rules are found in rule 608(a) (allowing opinion or reputation evidence only after impeachment of a party's witness) and in rule 612(c) (prohibiting the use of prior consistent statements of a witness for the sole purpose of enhancing his credibility). TEX.R.CRIM.EVID. 608(a), 612(c).

ough information. We find that although the officer's testimony should have been excluded, its erroneous admission did not contribute to appellant's conviction or punishment. The reliability and accuracy of Myles' information has no bearing on the offense of which appellant was convicted, delivery of a controlled substance. We are not asked to address the issue of probable cause to conduct a warrantless search, in which the reliability of the informant would be highly relevant. The credibility of the informant is unrelated to the evidence upon which appellant was convicted. Therefore, the bolstering testimony was harmless error.

We overrule point of error six.

We affirm the judgment of the trial court.

COHEN, Justice, Dissenting.

I would reverse this case because "declaring the error harmless would encourage the State to repeat it with impunity." *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). In almost the first words he spoke in this case, the prosecutor violated the law by asking whether appellant had a reputation as a drug dealer. This occurred on the second page of the statements of facts. It was the prosecutor's twelfth question to his first witness. The other questions asked the witness to state his name, age, employment, prior felony convictions, and whether he could identify appellant. Neither appellant or his counsel had yet spoken a word to any witness nor done anything to invite this question. Obviously, the prosecutor was determined to get this fact before the jury at the earliest possible moment. Appellant immediately stated three objections, and the judge overruled all three, thus putting the judicial seal of approval on the prosecutor's question three times in front of the jury.

Could the prosecutor have believed this was a proper question? The Court of Criminal Appeals says no:

> There is no better known rule than that the reputation of the defendant cannot be inquired into by the State unless the accused himself opens up the way.

*Brown v. State*, 605 S.W.2d 572, 574 (Tex. Crim.App. [Panel Op.] 1980); *Smith v. State*,

659 S.W.2d 427, 429 (Tex.Crim.App.1983). I would characterize this, in the words of the Court of Criminal Appeals, as "hornbook law" that "no *reasonably competent* prosecutor would violate." *Thompson v. State*, 651 S.W.2d 785, 786, n. 3 (Tex.Crim.App.1983) (emphasis in original). This has been the law in Texas for more than a hundred years, and since 1986 has been codified as part of our statutory law. TEX.R.CRIM.EVID. 404. If the prosecutor does not know this rule, we should help him learn it before he jeopardizes other cases with the same error. Affirming this case is unlikely to do so.

If, on the other hand, the prosecutor knew this rule of law, of which none is "better known," then we should be even faster to reverse this case. Bad faith is a more serious threat to the judicial process that mere incompetence because it is harder to cure. Affirming this case is even less likely to cure bad faith than it is to cure ignorance of this basic rule. In either case, "declaring the error harmless would encourage the State to repeat it with impunity." *Harris v. State*, 790 S.W.2d at 587.

In *Smith*, the court held that it is "reversible error to put the defendant's reputation in issue before he has done so." 659 S.W.2d at 429. The court there held that the error was reversible without any inquiry into harm. The court stated its reason for reversing without discussing harm:

> We can scarcely conceive of a question which *in and of itself* could be more hurtful to an accused than one calling for an answer which would put at issue his general reputation.

*Id.* (emphasis added). Thus, even if the evidence of guilt was strong, there would be good reason to reverse this case. We should not be that confident on this record, however.

Three witnesses saw appellant deliver cocaine. One was Donald Myles, a paid informant of 12 years standing with prior convictions for sexual assault and delivery of controlled substances. Myles was living at the Texas Department of Corrections at the time of trial, serving time for delivery of drugs. He actively participated in this case by receiving cocaine from appellant and handing it to Officer Rios. The delivery conviction for

which he was serving time occurred a few weeks after the date of the offense in this case.

Two police officers testified they saw appellant hand cocaine to Myles, who then handed it to Officer Rios. Upon delivery, Officer Rios gave appellant the fifty dollars, in addition to the fifty dollars he had paid him 25 minutes before upon placing his order. Officer Peaco watched the transaction from a distance. He saw appellant hand something to Myles, but could not see it was cocaine. Officer Peaco further testified he had appellant in sight constantly from the time appellant delivered the drugs to Rios until he was arrested, a period of one to five minutes. Even though appellant was watched continuously and was arrested almost immediately after receiving his second fifty dollar payment from Officer Rios, none of that money was recovered from him upon his arrest.

In jury argument, the State conceded that it would have had "a problem" if it had been forced to rely only on the testimony of Donald Myles. The prosecutor strongly urged the jury to convict appellant based upon the testimony of Officer Rios and, "to a lesser extent," the testimony of Officer Peaco. Thus, the State's position was that its case rose or fell based primarily on Officer Rios. Although his testimony and Officer Peaco's was persuasive, there was some room in this case for a rational jury to have had a reasonable doubt, based upon the involvement of a dubious character like Myles and on the State's failure to recover any money from appellant, even though he was arrested only minutes after receiving it and was in sight continuously during that time. Under these circumstances, I cannot say with confidence beyond a reasonable doubt that a rational jury could not have been influenced by the prosecutor's question and by the judge's three rulings, each of which informed the jury that reputation was a proper subject for questioning.

Given the prosecutor's failure to understand, or unwillingness to follow, such an elementary rule of criminal law, I am confident that declaring this error harmless would encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d at 587. Therefore, I would sustain point of error one, reverse the judgment, and remand the cause.