

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-09-00013-CR

_____


JAMES EDWARD PERKINS, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 22889


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

James Edward Perkins sold crack cocaine to a confidential informant and was convicted by a jury for delivery of a controlled substance. The trial court assessed punishment at thirty-five years' imprisonment in the Texas Department of Criminal Justice–Institutional Division.[1]

Perkins contends the evidence is legally insufficient because the testimony of the confidential informant was not sufficiently corroborated. Perkins further contends the trial court erred in admitting evidence, over his objection, that the informant worked successfully in the past on other cases for the police. We affirm the trial court's judgment because (1) sufficient evidence corroborates the confidential informant's testimony; and (2) any error occasioned by improper admission of testimony seeking to explain the confidential informant's demeanor on the witness stand is harmless.

---

[1]The indictment charged delivery of less than one gram of cocaine, which offense is punishable as a state-jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon Supp. 2009). Cocaine is classified as a penalty group 1 controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN.§ 481.102 (3)(D) (Vernon Supp. 2009). Perkins was also charged as an habitual offender with two previous final felony convictions, the second of which occurred after the first conviction became final. The punishment range thus increased to that of a second-degree felony. *See* TEX. PENAL CODE ANN. § 12.42(a)(2) (Vernon Supp. 2009). Because this offense was otherwise punishable as a felony of the second degree, and because it was shown at the punishment phase of the trial that the offense was committed within 1,000 feet of premises owned by an institution of higher learning (Paris Junior College), the offense became punishable as a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(b)(1) (Vernon Supp. 2009). The punishment range for a first-degree felony is life or five to ninety-nine years in prison. *See* TEX. PENAL CODE ANN. § 12.32 (Vernon Supp. 2009).

# I.    FACTUAL AND PROCEDURAL HISTORY

On April 28, 2009, Perkins sold .47 grams of crack cocaine to Taimak Norman, a confidential informant who was acting covertly on behalf of the Paris Police Department. Earlier that day, Norman contacted Leigh Foreman, an officer working in the narcotics division of the Paris Police Department, to advise that he knew a person who was selling crack cocaine. Based upon that information, Foreman met with Norman to arrange for Norman's cocaine purchase.

Prior to the encounter with Perkins, Norman was searched to ensure that he was not carrying any contraband on his person. Foreman then outfitted Norman with a covert audio recording device and provided him with copied currency in order to purchase the crack cocaine. Although the record does not reflect how Norman knew which telephone number to dial, he made a telephone call to an unknown person[2] and made arrangements through that telephone call for the delivery of crack cocaine to Norman's residence. This telephone conversation was recorded by the police and the resulting transaction was videotaped by Foreman[3] from his vantage point atop Noyes Stadium, looking down on the parking lot of Norman's apartment, where the transaction took place.[4]

---

[2]Norman initially believed the "unknown person" to be Perkins's nephew; later, it became apparent that Norman was dealing with Perkins himself.

[3]Foreman and two other officers were positioned at Noyes Stadium, observing the transaction.

[4]Because Norman went upstairs to his apartment to visit the restroom when his mother returned home, Foreman was unable to observe him continually while awaiting Perkins's arrival.

About forty-five minutes after Norman placed the telephone call, Perkins arrived at Norman's residence, riding as a passenger on a motorcycle driven by someone else. After Perkins alit from the motorcycle, he and Norman engaged in conversation which Foreman described as "dope talk." Perkins asked Norman what he had, and Norman told him "140." Perkins then asked to see the money and, thereafter, the money and drugs were exchanged. Although Foreman could see the parking lot as he recorded the meeting on video, a street sign partially obscured the camera's view of the transaction itself. The video recording, therefore, does not depict the actual exchange of narcotics for money. Foreman was nevertheless able to identify the black male on the video recording as Perkins, and he also identified Perkins in the courtroom as being the individual he observed during the drug transaction.

Upon completion of the transaction, Foreman and fellow officers met with Norman at a predetermined location to recover the cocaine purchased from Perkins and to retrieve the audio recording device worn by Norman. Norman was searched once again, this time to confirm that the only contraband he had on his person was that which had been just recently purchased from Perkins.

As a result of the foregoing events, Perkins was indicted on September 11, 2008, on a charge of delivery of less than one gram of cocaine in a drug-free zone.[5]

---

[5]This offense took place within 1,000 feet of Paris Junior College, an institution of higher learning.

The State filed a notice of consolidation and joinder of this charge with another drug charge which arose on a different date, and both matters were tried to a jury.[6]

## II.   CORROBORATION

Perkins maintains on appeal that there is no evidence to corroborate Norman's testimony.

Article 38.141 of the Texas Code of Criminal Procedure provides:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

> (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a), (b) (Vernon 2005).

Legal and factual sufficiency standards of review are not applicable to a review of covert witness testimony under Article 38.141 because corroboration of such testimony is a statutorily-required mandate. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141 (Vernon 2005). The standard for evaluation of the sufficiency of the corroboration of the testimony of a covert witness is the same as that of the testimony of an accomplice. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App.

---

[6]Perkins was indicted on an additional charge of delivery of a controlled substance as a result of a sting operation in February 2008; these matters were consolidated for trial. The conviction resulting from the earlier indictment is the subject of a separate appeal before this Court, styled *James Edward Perkins v. State*, cause number 06-09-00012-CR, the opinion in which is issued of even date herewith.

2008); *Brown v. State*, 159 S.W.3d 703, 707 (Tex. App.—Texarkana 2004, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005), for the corroboration required of an accomplice witness.

A challenge of insufficient corroboration of evidence given by a covert witness described in Article 38.141 does not stand on the same plateau as a challenge of insufficient evidence to support the verdict as a whole. *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999). Rather, under the test which is applied, we must exclude the testimony of the covert witness from consideration when weighing the sufficiency of corroborating evidence under Article 38.141(a) and examine the remaining evidence to determine whether this evidence is some which "tends to connect" the defendant to the commission of the offense. *Malone*, 253 S.W.3d at 258. The tends-to-connect standard does not present a high threshold. *See Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.).

In determining the quantum of evidence required to corroborate covert agent testimony, each case must be judged on its own facts, and even insignificant circumstances may satisfy the test. *Id.* Evidence is insufficient to corroborate covert agent testimony if it shows merely that the defendant was present during the commission of the offense. *McAfee v. State*, 204 S.W.3d 868, 872 (Tex. App.—Corpus Christi 2006, pet. ref'd). Although evidence tending to connect a defendant to an offense may not be sufficient for a conviction, it need not rise to such a high threshold for purposes of corroboration. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). The corroborating

6

evidence must provide "suspicious circumstances" in addition to "mere presence" at the scene of a crime which would tend to rebut that the defendant's presence at the scene of the crime was more than simply "innocent coincidence." *McAfee*, 204 S.W.3d at 872. With these precepts in mind, we shall examine the evidence to determine whether it tends to connect Perkins with the offenses committed.

The evidence here, absent confidential informant testimony, establishes that: (1) Norman was a willing and cooperative informant acting at Foreman's direction; (2) Norman was searched prior to his meeting with Perkins to ensure that he was not carrying contraband; (3) Foreman provided Norman with $140.00 to purchase narcotics; (4) the recorded telephone call revealed Norman calling someone to make arrangements for the delivery of narcotics to Norman's residence; (5) Foreman fitted Norman with a covert audio recording device prior to Norman's meeting with Perkins; (6) a video recording of the meeting between Norman and Perkins was made by Foreman from his vantage point atop Noyes Stadium; (7) Foreman identified the person with Norman on the video recording as Perkins; (8) Foreman identified Perkins on the audio recording asking Norman "what he has"; (9) Foreman identified Norman on the audio recording telling Perkins he had "140"; (10) Foreman identified Perkins on the audio recording asking to see the "140"; (12) Foreman recovered cocaine from Norman after Perkins left the area.

Here, we have direct eyewitness testimony from a law enforcement agent that tends to establish Perkins's participation in this narcotics transaction. Foreman identified Perkins on the

video recording of the meeting and identified Perkins's voice on the audio recording in a conversation capturing the essence of the transaction (i.e., the amount of money Norman was to spend to purchase illicit drugs). All of the above-listed additional evidence is sufficient under the test to supply the requisite corroboration. It is apparent that Perkins's purpose in meeting with Norman was to sell narcotics.

The evidence further shows that Perkins's companion (i.e., the driver of the motorcycle upon which Perkins arrived) did not participate in the conversation between Norman and Perkins. In fact, this unknown driver did not dismount the motorcycle but, rather, simply waited for Perkins to conclude the transaction, after which they both left. In light of the fact that cocaine was recovered from Norman after Perkins's departure, this evidence likewise tends to connect Perkins to the commission of the offense.

Perkins argues that because neither the audio nor video recording of his meeting with Norman depicts the actual exchange of cocaine for money, there is no evidence which tends to connect him to the April 28, 2008, transaction. We do not find it necessary that corroborating evidence under Article 38.141 of the Texas Code of Criminal Procedure depict the actual exchange of money and drugs. If that were the case, the standard for corroborating evidence would rise to the level of establishing guilt beyond a reasonable doubt. Such is not the standard. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997) (nonaccomplice evidence need not directly link person to crime, nor must it establish guilt beyond a reasonable doubt). As the Texas Court of Criminal

8

Appeals has indicated, in order to corroborate confidential informant testimony, "All the law requires is that there be *some* [noncovert] evidence which *tends* to connect the accused to the commission of the offense." *Hernandez v. State*, 939 S.W.2d 173, 178–79 (Tex. Crim. App. 1997). While each of these circumstances (taken alone) might not be sufficient to corroborate Norman's testimony, the weight of all of them when taken together provides the basis for a rational juror to conclude that this evidence sufficiently *tended* to connect Perkins to the offense. *See id.*

Perkins further contends that because Norman went inside the apartment building before Perkins's arrival to visit the bathroom, there was opportunity for Norman to obtain the cocaine from a source other than from Perkins. While it is true that Norman entered the apartment for a brief period of time upon his mother's arrival at home, it is equally plausible that Norman did so in order to quell any suspicion his mother may have had in coming home to find her son standing alone in the parking lot. Foreman testified that when Norman's mother came home, Norman went upstairs and was talking with his mother; her voice was clearly audible on the recorder. Given these circumstances, it is quite unlikely that Norman obtained the cocaine from his own apartment, at the particular time that his mother returned home. The brief visit Norman had with his mother does not detract from the other "suspicious circumstances" which tend to connect Perkins to the offense committed. This possibility does not substantially detract from those suspicious circumstances and would reflect more on the weight the jury could place on the evidence in its deliberations.

9

## III. RELEVANCY

Perkins's second point of error centers on certain testimony elicited from Foreman as follows:

> Q.     [THE STATE] And are there any defendants -- do you have any information whether or not there's anyone that's causing Mr. Norman some concern right now?
>
> A.     [FOREMAN]  Yes.
>
> Q.     And what is that information?
>
> [DEFENSE COUNSEL]:  Objection, relevancy, Your Honor.
>
> THE COURT:  What is the relevancy?
>
> [THE STATE]:  Your Honor, what we are -- we were trying to give them some information with reference to Mr. Norman's demeanor on the stand; one of the things that the jury has to look for.  And he didn't want to give some information about where he was living, where he was working, et cetera.  We didn't want the jury to feel like he was withholding information, so we have an explanation for that.
>
> THE COURT:  All right.  I'll overrule the objection.

After the objection was overruled, Foreman explained that certain individuals from whom Norman purchased cocaine in the past were looking for him in order to threaten, hurt, or kill him. This testimony, presumably, was offered in an attempt to explain the apparent hesitancy of Norman to provide detailed information relating to his home and work so as to squelch any opinion on the part of the jury that such evasiveness reflected on his credibility.  Perkins claims this evidence was not relevant.

10

Rule 401 of the Texas Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Given the definition of relevance, we agree that this testimony is not relevant to the issue of Perkins's guilt. *See Roberts v. State*, 866 S.W.2d 773 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (reliability and accuracy of informant's information has no bearing on the offense of delivery of controlled substance). Accordingly, Perkins's relevancy objection should have been sustained.[7] *See* TEX. R. EVID. 401; *Roberts*, 866 S.W.2d at 778–79.

Where error is not constitutional, we disregard it if it does not affect the appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected where the error causes a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). Such error is harmless if there is reasonable assurance, upon examination of the record as a whole, that the error did not influence the jury's verdict or had but slight effect. *Rivera-Reyes v. State*, 252 S.W.3d 781, 787 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

---

[7]Perkins argues that the testimony in question should have been excluded under Rule 403 of the Texas Rules of Evidence. Rule 403 provides that relevant evidence may be excluded on the ground that the probative value of the evidence is nevertheless substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. An objection that the evidence is not relevant is not synonymous with an objection that the evidence is unfairly prejudicial under Rule 403. *See Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g).

While this evidence did pertain to Norman's credibility, Perkins's relevancy objection was not abandoned when other evidence of Norman's credibility was admitted without objection; such evidence was of a general nature, and was not the same evidence as was elicited here. *See Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996) (holding if defendant objects to admission of evidence, but same evidence is subsequently introduced from another source without objection, defendant waives his earlier objection). The record of this case persuades us, however, that error occasioned by the admission of this improper testimony was harmless. The evidence of credibility was cumulative of testimony provided by Foreman and was unrelated to the evidence upon which Perkins was convicted. The admission of the testimony in question was not error of such magnitude that the jury's proper evaluation of the evidence was disrupted. *Roberts*, 866 S.W.2d at 776.

We overrule this point of contention.

## IV. CONCLUSION

Because Norman's testimony was corroborated by evidence that tends to connect Perkins to the transaction and because error in the admission of irrelevant testimony regarding Norman's credibility was harmless, we affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     November 13, 2009
Date Decided:       November 18, 2009

Do Not Publish

12