

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00012-CR
_____


JAMES EDWARD PERKINS, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 22711



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

James Edward Perkins, also known as "Cadillac," entered a Paris, Texas, motel carrying a food container and accompanied by an unidentified Hispanic man. The Hispanic man was stationed just inside the door into the room and, while there, smoked crack cocaine. As previously arranged, Perkins met in that room with James Liggins, who at the time (unknown to Perkins) was a confidential informant working with the Paris Police Department; the meeting was ostensibly for the purpose of Perkins' sale of crack cocaine to Liggins. Another key fact unknown to Perkins at the time was that police officials had set up video and audio monitoring equipment in the adjoining room and recorded the ensuing transaction between Perkins and Liggins.

After a jury trial, Perkins was convicted of delivery of a controlled substance, 1.05 grams of crack cocaine, in a drug-free zone and sentenced to thirty-five years' imprisonment in the Texas Department of Criminal Justice–Institutional Division.

On appeal, Perkins contends the evidence is legally insufficient because Liggins' testimony was not sufficiently corroborated. Perkins further contends the trial court erred in admitting evidence, over his objection, that Liggins worked successfully in the past on other cases for the police. We affirm the trial court's judgment because (1) sufficient evidence corroborates Liggins' testimony, and (2) error was not preserved with respect to testimony regarding Liggins' credibility.

*The Sting*

Earlier on the day of the meeting in the motel, Liggins had contacted Shane Stone, a police officer serving in the narcotics division for the City of Paris, to inform Stone that he could buy drugs from somebody known as "Cadillac."[1] At Stone's direction, Liggins rented two rooms at a local motel. Liggins was to meet Perkins in one of the rooms; Stone used the second room to set up an audio and video monitoring system in order to simultaneously record and observe the transaction. Before the meeting, Stone searched both Liggins and the room in which Liggins would meet with Perkins to ensure no drugs were present. Stone then gave Liggins $160.00 to purchase the narcotics and the call was placed to Perkins. Liggins did not leave the room, and no one entered the room during the thirty to forty-five minutes spent awaiting Perkins' arrival.

Perkins arrived at the motel room carrying a food container and had with him an Hispanic man who was unfamiliar to Liggins. It appears that the Hispanic man acted as a lookout. Perkins and Liggins then conversed for a short time, during which time the Hispanic man smoked crack cocaine and Perkins smoked either a cigarette or crack cocaine. Stone was unable to observe the actual transaction, but believes the drugs were brought into the room in the food container and the

---

[1]Initially, Perkins' true identity was unknown to Stone and to Liggins; he was known only as "Cadillac." Stone was able to verify that Perkins was employed at Waste Management—information Perkins disclosed to Liggins during the narcotics transaction. In addition, Stone was able to verify Perkins' identity through a fellow officer who was familiar with Perkins. Stone was then able to locate a photograph of Perkins and identify him as the person from whom Liggins purchased the narcotics.

transaction took place while Liggins and Perkins were talking.[2]  After Perkins and his Hispanic companion left, Stone retrieved the narcotics from Liggins and documented the recovery of same on tape.  Perkins was arrested several months later on the charge of delivery of a controlled substance.[3]

As a result of the foregoing events, Perkins was indicted May 15, 2008, on the charge of delivery of more than one gram but less than four grams of cocaine within a drug-free zone.[4]

The State filed a notice of consolidation and joinder of this charge with another drug charge which arose on a different date.  Perkins did not object to the joinder, and the two matters were tried together.[5]  After a finding of guilt was returned by the jury, the trial court sentenced Perkins to thirty-five years' imprisonment.[6]

---

[2]Because the audio recording was extremely poor, the conversation between Perkins and Liggins was not discernible.

[3]Stone explained that Perkins was not arrested immediately because to do so would compromise Liggins' status as a confidential informant.

[4]This offense took place within 1,000 feet of North Lamar High School.

[5]Perkins was indicted on an additional charge of delivery of a controlled substance in April 2008, and these matters were consolidated for trial.  The conviction resulting from the April indictment is the subject of a separate appeal before this Court, styled *James Edward Perkins v. State*, cause number 06-09-00013-CR, the opinion in which is issued of even date herewith.

[6]The indictment charged delivery of one gram or more but less than four grams of cocaine. This offense is punishable as a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(c) (Vernon Supp. 2009).  Because it was shown at the punishment phase of the trial that the offense was committed within 1,000 feet of a school (North Lamar High School), the penalty for the offense becomes that of a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(b) (Vernon Supp. 2009). The punishment range for a first-degree felony is life or five to ninety-nine years in prison. *See* TEX. PENAL CODE ANN. § 12.32 (Vernon 2003).  Because

*(1)*     *Sufficient Evidence Corroborates Liggins' Testimony*

Perkins maintains on appeal that there is no evidence to corroborate Liggins' testimony.

Article 38.141 of the Texas Code of Criminal Procedure provides:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.
>
> (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a), (b) (Vernon 2005).

Legal and factual sufficiency standards of review are not applicable to a review of covert witness testimony under Article 38.141 of the Texas Code of Criminal Procedure, because corroboration of such testimony is a statutory requirement imposed by the Texas Legislature. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141 (Vernon 2005); *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (holding that standard for evaluating sufficiency of evidence for corroboration under accomplice-witness rule applies when evaluating sufficiency of evidence for corroboration under covert-agent rule); *Brown v. State*, 159 S.W.3d 703, 707 (Tex. App.—Texarkana 2004, pet. ref'd). Thus, a challenge of insufficient corroboration is not the same as a challenge of

this offense was committed in a drug-free zone, the punishment range is further increased by five years and the maximum fine is doubled. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(c) (Vernon Supp. 2009).

5

insufficient evidence to support the verdict as a whole. *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999). Accordingly, we must exclude the testimony of the covert witness from consideration when weighing the sufficiency of corroborating evidence under Article 38.141(a) of the Texas Code of Criminal Procedure and examine the remaining evidence to determine whether this evidence tends to connect the defendant to the commission of the offense. *Malone*, 253 S.W.3d at 258. The tends-to-connect standard does not present a high threshold. *See Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.).

In determining the quantum of evidence required to corroborate covert-agent testimony, each case must be judged on its own facts, and even insignificant circumstances may satisfy the test. *Id.* Evidence is insufficient to corroborate covert-agent testimony if it shows merely that the defendant was present during the commission of the offense. *McAfee v. State*, 204 S.W.3d 868, 872 (Tex. App.—Corpus Christi 2006, pet. ref'd). Although evidence tending to connect a defendant to an offense may not be sufficient for a conviction, it need not rise to such a high threshold for purposes of corroboration. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). With these precepts in mind, we shall examine the evidence to determine whether it tends to connect Perkins with the offenses committed.

The evidence here, absent confidential-informant testimony, establishes the following: (1) Liggins was a willing and cooperative informant acting at Stone's direction, (2) both Liggins and the hotel room in which the narcotics transaction was to take place were searched before the

transaction to ensure that Liggins did not have any narcotics or other drugs before his contact with Perkins, (3) Stone provided Liggins with $160.00 to purchase the narcotics, (4) Liggins did not leave the room and no one entered the room while Liggins awaited Perkins' arrival, (5) Perkins arrived at the motel room carrying a food container and bringing with him an unidentified Hispanic man, (6) Perkins and Liggins engaged in a conversation while the Hispanic man stood by the door, (7) after Perkins and the Hispanic man left the hotel room, Stone retrieved the narcotics from the room where the deal took place and documented recovery of same on a recording, (8) Liggins did not leave the room before the narcotics were retrieved, (9) Stone observed the scene in real time via pre-placed video equipment, and (10) it appeared to Stone that the drugs were brought into the room in the food container and that the transaction took place while Liggins and Perkins were talking.

Here, we have direct eyewitness testimony from a law enforcement agent tending to connect Perkins' participation in this transaction that had been orchestrated and monitored by local law enforcement. While the audio recording of the meeting was not viable, the jury was able to observe the video recording of the entire meeting between Perkins and Liggins. The sequence of events was before the jury with Stone's testimony. Stone identified Perkins and placed him at the scene of the transaction.

Moreover, the State introduced evidence of "suspicious circumstances" tending to connect Perkins to the transaction. While Perkins entered the room with a food container, he did not consume any food during his meeting with Liggins. Perkins and Liggins conversed while an

7

unidentified Hispanic man stood at the door. This evidence, when combined with the fact that Liggins presented Stone with crack cocaine after Perkins' departure, is sufficient to corroborate Liggins' testimony. Perkins was not "merely present" during the commission of the offense; this expression denotes "an element of innocent coincidence" that is lacking in this case. *McAfee*, 204 S.W.3d at 872. Added to these "suspicious circumstances" is the fact that crack cocaine was being smoked in the hotel room (by the Hispanic companion and perhaps by Perkins) at the time of, and in the same immediate space as, Perkins' meeting with Liggins. Taken as a whole, the noncovert-agent evidence shows more than Perkins' mere presence at the scene.

Perkins argues that evidence of suspicious circumstances tending to connect him to the commission of this offense is entirely lacking. He points out that the audio recording is of no value, and we agree that it establishes nothing due to the poor quality of the recording. Perkins further points out that Stone cannot point to a particular portion of the video recording as depicting the actual exchange of cocaine for money. Further, Stone did not retrieve the container within which he suspected cocaine had been transported into the hotel. While each of these observations is accurate, they do not carry the day. Long-standing Texas law holds that the tends-to-connect standard does not present a high threshold. *Cantelon*, 85 S.W.3d at 461. As the Texas Court of Criminal Appeals has indicated, in order to corroborate confidential-informant testimony, "all the law requires is that there be *some* [noncovert] evidence which *tends* to connect the accused to the commission of the offense." *Hernandez v. State*, 939 S.W.2d 173, 178–79 (Tex. Crim. App. 1997).

While individually these circumstances might not be sufficient to corroborate Liggins' testimony, taken together, rational jurors could conclude that this evidence sufficiently *tended* to connect Perkins to the offense. *See id*.

We overrule this contention of error.

*(2)    Error Was Not Preserved with Respect to Testimony Regarding Liggins' Credibility*

Perkins also claims the trial court erred in overruling his relevance objection to evidence showing Liggins to have successfully worked other cases for the police. The testimony with which Perkins takes issue is as follows:

Q.[STATE]  Some CIs are better than others?

A.[WITNESS]  Sure.

Q.  In February of 2008, were you using a confidential informant?

A.  Yes, we were.

Q.  And who were you using?

A.  James Liggins.

Q.  Mr. Liggins do a good job for Paris PD and the City of Paris?

A.  He made several cases, yes.

Q.  Approximately how many cases did he make?

A.  Fifteen to twenty, I would say, at least.

Q.  And do you have any idea how many people are in prison now as
a result of Mr. Liggins?

9

[DEFENSE COUNSEL]: Objection, relevancy to the other cases.

THE COURT: Overrule the objection.

A. I would say most of them, as far as I know.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). We will not reverse a trial court whose ruling was within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex. Crim. App. 1990) (op. on reh'g).

This testimony establishes that Liggins successfully worked other cases for the police and was a good and reliable confidential informant. No objection was lodged until the number of imprisonments attributable to Liggins' work was sought. Because there was no objection to the previous testimony regarding Liggins' past successful work as a confidential informant for the Paris Police Department, any complaints regarding the admission of that testimony were not preserved for appellate review. TEX. R. APP. P. 33.1.

Perkins did, however, object on relevancy grounds to the admission of evidence regarding the number of people imprisoned as a result of Liggins' work as a confidential informant. Rule 401 of the Texas Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Given the definition of relevance, we agree that testimony regarding the number of people imprisoned as a result of Liggins'

10

work is not relevant to the issue of Perkins' guilt. *See Roberts v. State*, 866 S.W.2d 773 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (reliability and accuracy of informant's information has no bearing on offense of delivery of controlled substance). Thus, its admission was error.

An error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); *Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996) (if defendant objects to admission of evidence, but same evidence is subsequently introduced from another source without objection, defendant waives his or her earlier objection). Thus, when the impression is created that the objection has been abandoned, the initial objection is insufficient to preserve the error for appeal. *See Purtell v. State*, 761 S.W.2d 360, 366 (Tex. Crim. App. 1988); *Cole v. State*, 194 S.W.3d 538, 545 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Texas law thus requires a party to continue to object each time objectionable evidence is offered, except where a running objection has been requested or when an objection has been made outside the presence of the jury to all testimony deemed by that party to be objectionable on a particular issue. *Ethington*, 819 S.W.2d at 858–59.

In this case, Perkins objected to the State's initial attempt to elicit testimony regarding the number of individuals imprisoned as a result of Liggins' work as a confidential informant. Perkins failed, however, to request a running objection or to otherwise make an objection outside the presence of the jury on this issue. Additional testimony was offered on this issue by Liggins without

11

objection.[7] In light of the record before this Court, we conclude that Perkins abandoned his objection and thus failed to preserve error for appeal. Even if error resulted from the admission of this evidence, any such error was cured or rendered harmless when other evidence that did not draw objection proved the same thing. *See Rivera-Reyes v. State*, 252 S.W.3d 781, 787 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:    November 13, 2009
Date Decided:      November 18, 2009

Do Not Publish

---

[7]The record reflects testimony from Liggins regarding his past work for the Paris Police Department, the number of people imprisoned as a result of this work, as well as Liggins' work as a confidential informant in Oklahoma. This testimony was admitted into evidence without objection.